(50 App. Div. 490.)

TRENTON POTTERIES CO. v. TITLE GUARANTEE & TRUST CO.

(Supreme Court, Appellate Division, Second Department. April 14, 1900.)

TITLE INSURANCE—EXCEPTIONS—CONSTRUCTION.

 A policy insured plaintiff corporation against loss or damage by reason of defects of title affecting certain premises purchased by it, or by reason of liens or incumbrances charging the premises at the date of the policy, except that defects or incumbrances arising after date of the policy, or created or suffered by the insured, and assessments not confirmed at the date of the policy, were not covered by it. *Held*, that an assessment confirmed at the date of the policy was covered by it, since the policy was to be construed as covering incumbrances existing at its date, and not as a covenant of warranty broken before its date, when plaintiff took deeds and possession of the premises.

 Goodrich, P. J., dissenting.

Appeal from special term, New York county.

Action by the Trenton Potteries Company against the Title Guarantee & Trust Company. From a judgment dismissing plaintiff's complaint on the merits, it appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, and WOODWARD, JJ.

Howard R. Bayne, for appellant.

John L. Cadwalader, for respondent.

HATCH, J. This action is brought to recover upon a policy of insurance issued by the defendant to the plaintiff, insuring the latter against "all loss or damage, not exceeding four hundred thousand dollars, which the insured shall sustain by reason of any defect or defects of title affecting the premises described in Schedule A, hereto annexed, or affecting the interest of the insured therein as described in said schedule, or by reason of unmarketability of the title of the insured to or in said premises, or by reason of liens or incumbrances charging the same at the date of this policy, saving all loss and damage by reason of the estates, interests, defects, objections, liens, and incumbrances excepted in Schedule B, or by the conditions of this policy, hereto annexed, and hereby incorporated into this contract." The exceptions contained in Schedule B are found in subdivision 9, in the following words: "Defects and incumbrances arising after the date of this policy, or created or suffered by the insured, and assessments not confirmed at the date of this policy, are not to be deemed covered by it;" and they are the only exceptions which in any wise limit the liability of the defendant for any matter or thing which arises upon the facts appearing in this case. For all purposes of practical certainty there is no dispute of fact. It appears that the defendant was engaged to search the title of five pieces of property for the plaintiff, and also to insure the title to the property against incumbrances and otherwise. Upon the date of the execution of the policy of insurance, and as early as October, 1892, there existed as a lien and incumbrance upon one of the pieces of property a confirmed assessment levied by the municipal authorities of the city of Trenton, N. J., amounting to $1,900 and upwards. The defendant was requested to pay and discharge this incumbrance, but declined so to do; and the plaintiff, having paid the same, brings this action to recover such sum, claiming that it falls within the terms and conditions of the policy. It is probably true that the relation of the defendant, so far as its employment involved a search of the title to the premises and an examination of the same, would not be other or different than that of a lawyer engaged to perform the same service, the obligation in such case being the exercise of ordinary reasonable skill and knowledge of the profession; and liability could only be predicated of negligence and misconduct in the examination. Byrnes v. Palmer, 18 App. Div. 1, 45 N. Y. Supp. 479; Ehmer v. Trust Co., 156 N. Y. 10, 50 N. E. 420. The contract of insurance, however, is an entirely different contract, wherein the doctrine of skill or negligence has no application. The contract issued by this defendant is one of insurance pure and simple, issued by a corporation, for which provision is made in the insurance law of the state. Article 5, Ins. Law; 2 Rev. St. (Banks & Bros.' 9th Ed.) p. 1202, § 170 et seq. Therein these corporations are placed upon substan-

tially the same footing, and are made subject to the same rules as apply to other insurance companies, excepting so far only as the character of the business transacted by the corporation is different from that transacted by other insurance companies recognized and provided for in the same law. These contracts are subject to the same rules of construction as are applicable to other insurance policies, and all doubts and ambiguities, if any, contained in the contract, are to be resolved in favor of the insured. Trust Co. v. Drexel, 36 U. S. App. 50, 17 C. C. A. 56, 70 Fed. 194. This is a familiar rule of law, applicable to the construction of such contracts. Allen v. Insurance Co., 85 N. Y. 473. That such is the character of these contracts is recognized by decisions in other states. Gauler v. Trust Co., 9 Pa. Co. Ct. R. 634; Wheeler v. Trust Co., 160 Pa. St. 408, 28 Atl. 849; Richards, Ins. p. 14, § 10. Their interpretation and construction have become well settled. 2 Whart. Cont. § 670. It is clear, therefore, that it was competent for these parties to make any contract to insure the title to the specific pieces of property, or any one of them, upon such terms as were agreeable to both parties, whether the insurance operated upon defects which should come into existence after the delivery of the deeds and the entry into possession or before. It was clearly the right of the defendant to insure the title to these properties against incumbrances existing before the date of the deed or thereafter. It possessed the ability at all times to inform itself of the state and condition of the title, and to issue its policy of insurance insuring such title on any date that it chose; and when it issued the present policy, insuring this property against the incumbrance existing at its date, it was clearly competent for it so to do, and it became bound according to its tenor and effect. It was also competent for it to limit liability under the policy thus issued, and except from its liability such matters as it chose, which were agreeable to the party accepting the same; and this is precisely what it did in the present case. The exception therein, as we have already observed, exonerated it from liability for defects and incumbrances arising after the date of the policy, which were created or suffered by the insured. Then follows the exception, "and assessments not confirmed at the date of the policy." It is clear that the court would have been authorized to find, from the testimony given upon the trial, that upon the date of the execution and delivery of this policy the assessment of which complaint was made in this action had been in all respects confirmed, and constituted a lien and incumbrance upon the property. We do not think that the true interpretation of this policy embraced such assessment, within the language exonerating from liability incumbrances "created or suffered" by the insured. The context of the whole exception excludes such an interpretation. It formed a separate exemption, and was evidently not intended to be covered by such incumbrances as would be voluntarily created by the insured,— as the giving of a mortgage,—or suffered to be created, as permitting the recovery of a judgment. It is not within the fair purport of the language to hold that an assessment which the insured was or might be powerless to prevent could be said to be suffered or vol-

untarily created by him. If, however, there was ambiguity in this respect,—which is the most that can be claimed by the defendant,—the rule of law to which reference has already been made would require us to construe this clause most favorably to the insured. Under such construction we think it quite clear that it was not within the meaning and intent of the policy to except from liability the incumbrance of a confirmed assessment existing upon the date of the execution and delivery of the policy.

The court below dismissed the complaint upon the ground, substantially, that the guaranty against incumbrances ran only to the time the purchaser took its deed and entered into possession of the premises. Such, undoubtedly, would be the law as applied to the breach of a covenant contained in a deed, the rule being that breach of covenant is coexistent with the delivery of the executed deed. For an incumbrance thereafter created the covenant of warranty would not be broken. Such contracts are broken immediately, or not at all. It is evident, however, from what has preceded, that such doctrine can have no application to the contract of insurance issued in this case. Even if it could, there would be no breach of the contract until the execution and delivery of the policy of insurance; and as that, by its terms, insured against this specific incumbrance, there was an immediate breach of its condition upon the delivery. It may be true that the real contract between these parties contemplated that the guaranty and insurance of the title should take effect on the date of the delivery of the deed and the entry into possession, and should not be operative thereafter. Such was the theory of the defense set up in the answer to this action. That asks for a reformation of the contract of insurance, and such, evidently, was the theory of the attorney for the defendant when the cause came to trial. If such was not his theory, he came dangerously near to admitting the plaintiff's cause of action, and standing upon his defense for a reformation of the contract to make it conform to what was in fact the terms of the agreement. But, however this may be, the case finally went off on the other theory, and a construction placed upon the terms of the contract of insurance, which, as we have seen, it will not bear. Nor can we now consider the testimony bearing upon the question as to whether the contract should be reformed. The plaintiff has not been heard upon that question, as the complaint was dismissed upon an erroneous theory. Upon the testimony and the contract as it stood unreformed, the court would have been authorized to render a judgment in favor of the plaintiff. It follows from these views that the judgment should be reversed, and a new trial granted.

BARTLETT and WOODWARD, JJ., concur.

GOODRICH, P. J. (dissenting). I am constrained to differ with my associates in the views expressed in the opinion of Mr. Justice HATCH. There is no question but that, under the terms of the policy, the defendant guarantied the plaintiff against liens existing at its date. But a contract of insurance is one of indemnity, and

we may have regard to the circumstances under which it was executed, in order to determine the intention of the parties, and ascertain what was the real contract between the parties. Mr. Pomeroy, in his Equity Jurisprudence (section 858), states the general rule as follows:

"Parol evidence may, in proper modes, and within proper limits, be admitted to vary written instruments upon the ground of mistake, fraud, surprise, and accident. This exception rests upon the highest motives of policy and expediency, for otherwise an injured party would generally be without remedy."

The defendant is a corporation engaged in the business of examining and guarantying title to real estate. According to the admission of the reply, the plaintiff was incorporated in May, 1892, previously to which date the persons interested in the formation of the plaintiff corporation employed the defendant to examine and guaranty the titles to five pottery properties which were to become the property of the plaintiff. It is admitted by the pleadings that on April 24, 1893, the defendant issued its policy of title insurance, whereby it insured the plaintiff against all loss or damage, not exceeding $400,000, which it "shall sustain by reason of any defect or defects of title affecting the premises described in Schedule A, hereto annexed, or affecting the interest of the insured therein, * * * or by reason of liens or incumbrances charging the same at the date of this policy." The schedule enumerated five deeds of property to the plaintiff corporation, of which four were dated June 16, 1892, and recorded on July 8, 1892, one of which four covered premises known as the "Crescent," situated in the city of Trenton. The plaintiff went into possession under the deed about the time of its date. The fifth deed, dated April 17, 1893, conveyed premises known as the "Empire," and was recorded on April 24, 1893, the day on which the defendant's policy was issued. There was testimony of Mr. Van Buskirk tending to show that in October, 1892, an assessment for the widening of Allen street, on which the Crescent property was situated, became a lien on that property. The plaintiff contended that the defendant was bound to pay the assessment, because it was a lien on the Crescent property before and at the date of the policy. The defendant contended that there was a mistake in the language of the policy, and set up in the answer facts upon which it asked for a reformation of the policy so that the defendant should be held to a guaranty upon each separate policy as of the time when the plaintiff took title to and went into possession of the respective estates. At the close of the evidence of both parties the court rendered a decision that the defendant was entitled to a judgment dismissing the complaint upon the merits, on the grounds that the defendant was liable only for such liens as existed on each lot at the time the plaintiff took title and possession, that the assessment in question was imposed after the plaintiff received the deed of the property and went into possession thereunder, and that such assessment was not one of the liens insured against by the terms of the policy. The judgment followed the language of the decision dismissing the complaint upon the merits, without referring to the defendant's prayer for a reformation of

the policy. The evidence as to the exact time when the assessment became a lien is not very satisfactory. The plaintiff introduced a letter from Mr. Buchanan, one of the plaintiff's attorneys, to the defendant, dated March 6, 1895, calling attention to the fact that at the date of the policy there was an unpaid assessment on the Crescent. The defendant replied, asking when the assessment was laid, and Mr. Buchanan replied that the assessment was completed and filed August 10, 1892. He wrote again on March 11th and on March 20th, stating that there was some question as to the date when the assessment was completed, and that it "appears to have become due January 18, 1892; that, according to the record in the office of the assessors, they took final action in the matter of laying this assessment as late as August 10, 1892, and that on August 18, 1892, the board of public works directed notice of awards and assessments to be served on all persons interested." The cross-examination of Mr. Buchanan, who is a member of the New Jersey bar, and who was a witness called by the plaintiff, contains an extract from the charter of Trenton, passed in 1874, relating to the levying of assessments, which provides that it shall be the duty of the common council, "within one month after the presentation of said report, to cause a notice" thereof to be served on owners, and that, unless within two months thereafter certain papers are filed, the assessment shall "be a lien on the several lots." The testimony of Mr. Buchanan was that the report thus referred to was that of the commissioners of assessment. This duty was transferred to the board of public works by an act passed in 1892. Thus it appears from the letter of Mr. Buchanan, of March 20th, and from the charter, that the assessment did not become a lien until after the plaintiff went into possession of the Crescent under its deed. In the view which I take of this case, it was incumbent on the plaintiff to prove the date when the lien became operative so far as to fix the lien as imposed before the delivery of the plaintiff's deed, and I can find no such evidence. The plaintiff's counsel stated to the court during the trial:

"We say that on the 24th of April, 1893, and theretofore and thereafter, there was a lien or incumbrance on a part of the said premises, to wit, the parcel described in the policy. * * * The Court: Do you give the date when that was imposed? Mr. Bayne: No, sir. Prior to the date of the policy is all that we allege; that at the date of the policy and prior thereto it was a lien upon the premises. We do not undertake to say the exact date when the lien occurred beyond the fact that it occurred prior to the date of the policy."

It is evident, therefore, from this and subsequent colloquies between court and counsel, that the case was tried on the theory that the assessment became a lien before the date of the policy, not before the date of the plaintiff's deed. The question, therefore, is whether the policy was intended to cover any lien which was imposed intermediate the date of the deed and the date of the policy. Upon this subject the evidence of the president of the plaintiff shows that there was a question whether the defendant should issue separate policies for each piece of property or one for all five. If separate policies had been issued, it may be assumed that, accord-

ing to the well-known practice of title insurance companies, the defendant would have guarantied against liens existing at the time of the delivery of each deed; and, in this event, according to the theory upon which the action was tried, the present question would not have arisen. I think that the defendant company assumed no other or greater liability by the combination of all the properties in one policy; all the more, that the policy expressly states the date of each deed, and that the date of the deed of the Crescent property anticipates the date of the imposition of the lien. The contention of the plaintiff is that the policy is to be construed exactly and strictly according to its language, and that any ambiguity must be resolved in favor of the insured. This is the general rule governing insurance policies of this character, but, if the doctrine were final upon the construction of the policy, then the defendant would be liable to pay a judgment in a litigated action where judgment has been recovered against the insured after the execution of the deed and the issuance of the policy. Or, if a suit had been brought against the plaintiff's grantor to set aside the conveyance to the plaintiff, as made in fraud of creditors, and a judgment had been entered therein after the delivery of the deed and before the date of the policy, the defendant would have been liable therefor. The plaintiff assumes that such a judgment would come within one of the exceptions of the policy, which reads, "defects or incumbrances arising after the date of this policy, or created or suffered by the insured," and contends in its brief that a judgment recovered against it after it acquired title would be a lien created or suffered by it, and would not be covered by the policy. No cases are cited, and none have come under my observation, which extend the definition of "suffered" to such judgments as I have referred to. The word "suffer" would undoubtedly cover the case of a judgment confessed by the plaintiff, but it does not extend to a judgment which it has neither permitted nor allowed, and which has been recovered against its volition. The Century Dictionary, in its definition of the word "suffer," as used in such cases, terms it as equivalent to "permit" or "allow," and such is the manifest intention of the policy. I think that it was not the intention of the defendant to extend its guaranty to liens imposed after the plaintiff took title under the deed, even though they were imposed before the date of the policy. What the company intended to guaranty was, simply, that the plaintiff acquired a good title to the property, free of all incumbrances and liens at the time of the delivery of the deed, and the policy should be construed so as to make the defendant liable for assessments imposed after that time. The judgment should be affirmed.