Argued December 12, 1934; reversed February 19; rehearing denied
April 9, 1935

# DE CARLI *v.* O'BRIEN ET AL.

(41 P. (2d) 411)

*David L. Davies,* of Portland (John C. Veatch and Carey, Hart, Spencer & McCulloch, all of Portland, on the brief), for appellant.

*Roy F. Shields,* of Portland (A. C. Spencer, of Portland, on the brief), for respondents.

KELLY, J.   This case is presented upon the pleadings and a stipulation of facts. On the 18th day of May, 1932, during the pendency of this action in the circuit court, the defendant, Annie L. O'Brien, died intestate. On the 25th day of April, 1933, the parties hereto entered into a stipulation, which was also made a part of the stipulation of facts, wherein it was agreed that this action should continue against defendant, J. P. O'Brien, only, and that he waived any and all objections to the continuance and prosecution of said action against him alone without the substitution of the administrator of the estate of said Annie L. O'Brien, deceased, as a defendant in this case. In our discussion of the case we will, therefore, refer to but one defendant.

By stipulation, it is admitted that on July 27, 1925, Coe A. McKenna was the owner of lots 1, 2, 3, 4 and 5 in block 1, Good Morning Addition to East Portland, now within the corporate limits of the city of Portland and on said date Coe A. McKenna and his wife con-

veyed said real property to the defendant, J. P. O'Brien, who owned the same at all times thereafter until he executed a conveyance thereof to plaintiff on August 2, 1926. That on August 2, 1926, said J. P. O'Brien and Annie L. O'Brien, his wife, for a consideration exceeding in amount the sum for which plaintiff prays judgment herein, made, executed and delivered to the plaintiff a warranty deed conveying to plaintiff the real property above described, and ever since that time plaintiff has been and is now the owner of said property.

That said deed contained, among other provisions, the following to wit:

"And the grantors above named do covenant to and with the above named grantee, his heirs and assigns, that they are lawfully seized in fee simple of the above granted premises, that the above granted premises are free from all encumbrances, no exceptions, and they will and their heirs, executors and administrators, shall warrant and forever defend the above granted premises and every part and parcel thereof against the lawful claims and demands of all persons whomsoever."

That on November 5, 1924, in a cause then pending in the circuit court of the state of Oregon for the county of Multnomah, wherein E. R. Stark and Martha Stark were plaintiffs and Coe A. McKenna and others were defendants, there was made and entered a judgment in favor of the plaintiffs in said cause and against said Coe A. McKenna, in the sum of $4,500 and the costs and disbursements in said action; that on the said 5th day of November, 1924, said judgment was duly docketed and entered in judgment docket No. 20, at page 209, in said Multnomah county, at which time said Coe A. McKenna was the owner of said real property first hereinabove described.

That on the 3d day of January, 1925, said Coe A. McKenna served and filed in said cause a notice of appeal to the supreme court of Oregon, from said judgment; and on the 9th day of January, 1925, served and filed his undertaking on appeal wherein said Coe A. McKenna and his surety jointly and severally agreed that they would pay all damages, costs and disbursements which should be awarded against said McKenna on said appeal, and that if said judgment or any part thereof should be affirmed said McKenna would satisfy it so far as affirmed; that upon March 6, 1928, said judgment against said Coe A. McKenna was in all things affirmed by the supreme court.

That on March 12, 1928, said surety upon the appeal bond of said McKenna paid to the owner of said judgment the full amount due thereon and in consideration thereof said judgment and the lien thereof were thereupon transferred and assigned to Harry L. Raffety as agent and trustee of said surety, and said Harry L. Raffety in such capacity has remained the owner thereof at all times thereafter. That said judgment has not been satisfied, paid or discharged except to the extent hereinafter stated.

That on November 5, 1924, and at all times thereafter until August 3, 1926, said Coe A. McKenna owned, and was shown by the records of Multnomah county, Oregon, to own a number of parcels of land and lots in said county other than the five lots first hereinabove described, one of which said parcels of land said Coe A. McKenna still so owns, and the remaining parcels were sold and conveyed by said Coe A. McKenna to different parties at various dates after July 27, 1925; that during all of said times said other parcels of land and lots had a fair market value over and above encumbrances against the same in excess of the amount

of the judgment against said Coe A. McKenna as affirmed as heretofore stated; but no one of the other parcels of land so owned by Coe A. McKenna, which were free of encumbrances, during the period mentioned in said stipulation had a value equal to the amount of said judgment and the costs which would have accrued upon the sale of same under execution on said judgment, and that no one of the unencumbered parcels of land so owned by Coe A. McKenna, during the period mentioned, had a value as great as the value of said five lots first hereinabove described.

That at the time of the execution of the conveyance from the defendant, J. P. O'Brien, to the plaintiff, Frank De Carli, of said five lots first hereinabove described, said J. P. O'Brien, at his expense, and as a part of the consideration for such conveyance, furnished to plaintiff a title insurance policy issued by the Title & Trust Company, which policy insured plaintiff against loss or damage on account of any defect in the title to said premises, and also against any loss on account of any and all liens and encumbrances existing on or against said premises at the time of said conveyance.

That on or about the 4th day of February, 1927, plaintiff asserted a claim against said Title & Trust Company by reason of the existence of said judgment as a lien upon said premises, and thereupon said claim was compromised and settled by the payment of $300 to plaintiff by said Title & Trust Company at which time plaintiff executed a release in substantially the following form to wit:

"In consideration of the payment to me of $300.00 by Title and Trust Company, of Portland, Oregon, the receipt of which is hereby acknowledged, I, the undersigned Frank Decarli, do hereby release said Title and Trust Company from all liabilities, claims, and demands

now existing or hereafter to accrue under their policy of Title Insurance, No. 90907, insuring the title to Lots 1, 2, 3, 4, and 5, Block 1, Goodmorning Addition to East Portland, in the City of Portland, County of Multnomah and State of Oregon, and upon any policies hereafter to be issued on said premises or any portion thereof; but this release is expressly limited to such liabilities, claims or demands as may arise under claim of unmarketability of the title to said premises or any portion thereof, by reason of the existence of the judgment in the Circuit Court of the State of Oregon for Multnomah County against Coe A. McKenna doing business as Coe A. McKenna & Co. in favor of E. R. Stark and Martha Stark in the sum of $4500.00 with interest and costs, which judgment was entered 5 November 1924 in Docket 20 of the judgment Lien Dockets of said Court on page 209.

Dated 4 February 1927.

Frank Decarli''

At the time this action was commenced plaintiff had not paid any sum on account of the judgment hereinbefore mentioned; that after the commencement of this action and on or about January 30, 1929, and before the plaintiff had paid anything on account of said judgment, the defendants J. P. O'Brien and Annie L. O'Brien served upon plaintiff and his attorney of record in this cause a notice of which the following is substantially a true copy:

''Registered      Portland, Ore., January 30, 1929.

Mr. Frank DeCarli

Portland, Oregon

Dear Sir:

About January 11, 1929, you commenced an action against the undersigned in the Circuit Court of the

State of Oregon for Multnomah County, Case No. 1810, in which you seek to recover damages for an alleged breach of a warranty against incumbrances contained in a deed dated on or about August 2, 1926, executed by the undersigned, conveying to you Lots 1 to 5, inclusive, in Block 1, Good Morning Addition to East Portland, Multnomah County, Oregon.

The alleged incumbrance which you claim to have been a lien on said property at the date of said deed is a certain judgment recovered in the Circuit Court of the State of Oregon for Multnomah County, by E. A. Stark and Martha Stark, against Coe A. McKenna.

The purpose of this letter is to inform you that the holder of said judgment cannot enforce payment of said judgment by levying upon the lots, or any thereof, above mentioned. This is so for several reasons, some of which involve facts as to which I have not completed by investigation. When I have obtained the further information desired I will furnish it to you if you desire that I shall do so.

Because of the facts stated, if you pay said judgment or any part of thereof you will do so at your own peril insofar as any alleged liability against the undersigned is concerned. In making such statement we are not admitting that there is or has been any such liability on our part.

232½ Washington Street

> Very truly yours,
> (Sgd) J. P. O'Brien
> (Sgd) Annie L. O'Brien''

That thereafter and on or about February 13, 1929, defendants filed in this cause their answer to plaintiff's first amended complaint; that on or about the 2d day of December, 1929, defendants served upon plaintiff

and his attorney of record herein a further notice of which the following is substantially a true copy, to wit:

"Registered                                    Portland, Oregon
                                               December 2, 1929

Mr. Frank DeCarli
232½ Washington Street
Portland, Oregon

Dear Sir:

On January 30, 1929, we wrote you concerning the action which you had commenced against us in the Circuit Court, of the State of Oregon for Multnomah County, Case No. N1810, in which you seek to recover judgment for an alleged breach of a warranty contained in a deed executed by us to you on or about August 2, 1926.

In that letter we stated that the property so conveyed to you could not be levied upon for the satisfaction of the judgment which you alleged to be an encumbrance upon said property. The reasons for this statement are fully explained in the answer which we have filed to your complaint in that action.

Recently your attorneys have advised our attorneys that you expected voluntarily to pay said judgment and then recover from us the amount so paid by you. We reiterate our notice to you not to pay said judgment or any part thereof. We hereby offer to defend, at our expense, you and the said property against any liability for the satisfaction of said judgment, or any part thereof, and we hereby assert the right and demand the privilege of thus defending you and said property against any such alleged liability on account of said judgment.

We are sending a duplicate of this letter to your attorneys Messrs. Joseph, Haney and Littlefield and John C. Veatch.

Messrs. Joseph, Haney &        Very truly yours,
   Littlefield and John C.     (Sgd) J. P. O'Brien
   Veatch                      (Sgd) Annie L. O'Brien
      Yeon Building,
      Portland, Oregon."

The allegations of the answer to the first amended complaint. referred to in said notice are the same in substance as the allegations in defendant's answer to the second amended complaint. Plaintiff made no reply to the notices above set forth and did not offer or tender to the defendants the privilege of defending the plaintiff and/or his said property against liability for the satisfaction of said judgment or any part thereof, and did not file or cause to be filed any suit, action or proceeding to determine whether plaintiff or his said property was liable for the satisfaction of said judgment or any part thereof.

On February 5, 1930, plaintiff paid to Harry L. Raffety the sum of $2,500, and in consideration thereof said Harry L. Raffety executed a release which (omitting acknowledgment) read as follows:

"Partial Release of Judgments

"Know all Men by These Presents that Harry L. Raffety, the undersigned, in consideration of the sum of $2500.00 to him paid by Frank DeCarli, does hereby release the following described property in Multnomah County, State of Oregon:

"Lots 1, 2, 3, 4, and 5, Block 1, Goodmorning Addition to East Portland, in the City of Portland from the lien of the certain judgments docketed in the State Circuit Court on the 5th day of November, 1924, and on the 6th day of March, 1932, in Docket 20 page 209 and Docket 24 page 132, respectively, in an action entitled E. R. Stark, et al vs. Coe A. McKenna, et al., one for $4500.00 $165.35 costs and one for $4666.35, 6% from 6 November, 1924. $486.60 Supreme Court costs, which said judgments were duly assigned to Harry L. Raffety. "In Witness Whereof, the said Harry L. Raffety has herewith set his hand and seal this 5th day of February, 1930.

Harry L. Raffety."

That prior to the payment of said $2,500 and the execution of said release, said Harry L. Raffety had threatened that he would cause execution upon said judgments to be issued and levied upon the premises described in said release, but no levy was in fact made upon said premises or any part thereof. That the payment of said sum of $2,500 was made by plaintiff on February 5, 1930, and after receipt of the notices mentioned in paragraph 9 of this stipulation. On October 18, 1930, said Harry L. Raffety received and acknowledged full satisfaction of the balance then due upon the judgment assigned to him as aforesaid.

That neither the defendants J. P. O'Brien and Annie L. O'Brien or either of them have paid the judgments herein mentioned or any part thereof, although plaintiff has requested the defendants to pay said judgments and to remove said encumbrance, nor have said defendants, or either of them, paid to plaintiff any sum whatever on account of said judgments although plaintiff has requested defendants to reimburse him for the sums expended by him.

In plaintiff's second amended complaint damages are sought in said sum of $2,500 and interest thereon from the 5th day of February, 1930.

Defendants' answer presents the defense of alleged failure by plaintiff to minimize his damages, and the defense that the release of the title insurance company released defendant from liability on his covenant.

It is also urged by defendant that in order to warrant a recovery of substantial as distinguished from nominal damages it must be shown that payment by plaintiff to remove the encumbrance was made under compulsion and that this is not shown herein.

Defendant invokes the rule that where land subject to a general judgment is conveyed by the judgment debtor in separate tracts and to different persons, the judgment creditor, if he is obliged to resort to an execution, must satisfy his judgment by a sale of the tracts conveyed in the inverse order of their alienation: *Knott v. Shaw,* 5 Or. 482; *State of Oregon v. Munds,* 7 Or. 80, 82; *Oliver v. Wright,* 47 Or. 322 (83 P. 870); *National Savings Bank v. Creswell,* 100 U. S. 630, 640 (25 L. Ed. 713).

Based upon this rule, defendant urges that plaintiff failed to minimize his damages by failing to institute proceedings to require the assignee of the judgment creditor to realize the amount of his judgment from other property than the property in suit in the inverse order of its alienation.

As a general rule, it is the duty of one injured, because of a breach of contract, to minimize the damages as far as he may reasonably do so. This rule, however, is not applicable to every case: *Phelps v. Connellee,* 285 S. W. 1047; *Cameron Co. Water Imp. Dist. v. Gregory,* 291 S. W. 938, 939; *Montgomery Bank & Co. v. Kelly,* 202 Ala. 656 (81 So. 612); *Pratt Consol. Coal Co. v. Vintson,* 204 Ala. 185 (85 So. 502, 503); *Reichert v. Spiess,* 203 App. Div. 134 (196 N. Y. S. 466, 470).

A covenant against encumbrances is a contract of indemnity. Where one, who is bound to indemnify another, points out to the latter how he may avoid the loss, such other is not bound to resort to such means where the indemnitor had an equal opportunity to avail himself of them: *Dubois v. Hermance,* 1 N. Y. Sup. Ct. 293 (Thompson & Cook) affirmed in 56 N. Y. 673. It is obvious that if the defendant has a right and an oppor-

tunity to perform his contract, he cannot be heard to say that plaintiff might have performed for him: 17 C. J., Subject, Damages, p. 774, § 99, note 46, citing *Ash. v. Soo Sing Lung*, 177 Cal. 356 (170 P. 843) ; *Louisville & Etc. Ry. Co. v. Moore*, 106 Ind. 600 (5 N. E. 413).

It is urged by defendant that defendant could not maintain the requisite proceeding to require the assignee of the judgment creditor to realize the amount of his judgment from the various parcels of property affected by its lien in the inverse order of alienation, because defendant had parted with all interest in the property.

The weight of authority, and the better reasoning, support the principle that the vendor, who has conveyed land with covenants of warranty may secure injunctive relief against a sale upon execution where such sale would create a cloud on the purchaser's title: 23 C. J. 571, § 480, note 59, citing *McCulloch v. Hollingsworth*, 27 Ind. 115; *Bach v. Goodrich*, 9 Rob. (La.) 391; *San Bernardo Townsite Co. v. Hocker*, 176 S. W. 644; *S. K. McCall Co. v. Page*, 155 S. W. 655; *Huggins v. White*, 7 Tex. Civ. App. 563 (27 S. W. 1066) ; *Jackson Milling Co. v. Scott*, 130 Wis. 267 (110 N. W. 184) ; *May v. Granger*, 224 Ala. 208 (139 So. 569) ; *Chamblin v. Slichter*, 12 Minn. 276; *Ely v. Wilcox*, 26 Wis. 97; *Pier v. Fond du Lac Co.*, 53 Wis. 421 (10 N. W. 686) ; *Hartford v. Chipman*, 21 Conn. 488; *Sutliff v. Smith*, 58 Kan. 562 (50 P. 455) ; *Jackson v. Kittle*, 34 W. Va. 207 (12 S. E. 484) ; *Remer v. Mackay*, 35 Fed. 86.

This court has recognized that the rules which govern common law must govern as to the administration of this equitable jurisdiction in our courts: *O'Hara v. Parker*, 27 Or. 156, 170, 171 (39 P. 1004).

The following cases announce a contrary doctrine: *Howard v. Walsh,* 28 La. Ann. 847, 848; *Kelly v. Wiseman & Hinson,* 15 La. Ann. 661, 662; *Townsend v. Goelet,* 11 Abb. Pr. (N. Y.) 187; *Bissell & Adams v. Kellogg,* 60 (N. Y.) Barb. 617. These four cases last cited and others are reviewed in *Pier v. Fond du Lac County,* supra. *Townsend v. Goelet,* supra, is not one in which the plaintiff was a covenantor under general warranty against encumbrances.

The proceeding, which, under the foregoing authorities was available to defendant, is in the nature of a bill quia timet ("hence he fears").

"Bills quia timet are in the nature of writs known at the common law as brevia anticipantia, or writs of prevention, to accomplish the ends of precautionary justice. They are ordinarily applied to prevent wrongs or anticipated mischief, and not merely to redress them when done. The party asks the aid of the court because he fears some future probable injury to his rights or interests, and not because an injury has already occurred which requires compensation or other relief." *Roman Catholic Archbishop v. Shipman,* 69 Cal. 586 (11 P. 343); Story Equity Jurisprudence 826; Willard Equity Jurisprudence 393.

■ While the greater number of these authorities deal with cases wherein an execution has issued, certainly, in equity, there is no distinction between the actual issuance thereof and a threat to cause an execution to issue. Such a threat is shown in the case at bar. Moreover, the removal of a cloud upon title is sanctioned: *Ely v. Wilcox,* supra; *Pier v. Fond du Lac County,* supra; *Hartford v. Chipman,* supra.

"Courts of equity have inherent jurisdiction of actions to prevent or remove clouds on title to land, and have constantly exercised it from a very early period. But unless it was made to appear that the cloud com-

plained of was an apparent incumbrance of the land, rendering resort to evidence aliunde the record necessary to show that it was invalid, the court would refuse relief. Moore v. Cord, 14 Wis. 213; Gamble v. Loop, id, 465.

The remedies given in such actions are broad and ample. To give effectual relief, the court will decree the reformation, surrender or cancellation of deeds and other instruments affecting the title, or the reformation or cancellation of records and the execution of deeds or releases; in short, it possesses power to decree adequate relief, and to enforce full execution of its judgment." *Pier v. Fond du Lac,* 38 Wis. 470, 479, 480.

In principle there is no distinction between the remedy under consideration in the case at bar, namely an equitable proceeding requiring the owner of the judgment to recover thereon from other tracts in the inverse order of alienation and enjoining him from levying upon plaintiff's tract until such other means of recovery have been exhausted; and a suit to protect a homestead to the extent of $2,000 from a levy by a judgment creditor. In the latter case, neither the issuance of an execution nor a threat to do so is an essential prerequisite to such a cause of suit: *Corey v. Schuster,* 44 Neb. 269 (62 N. W. 470); *Birks v. Globe International Protective Bureau,* 56 N. D. 613 (218 N. W. 864); *Klemmens v. First Nat. Bank of Cassopolis,* 22 N. D. 304 (133 N. W. 1044).

■ As stated, defendant urges that the payment by the title insurance company of $300 to plaintiff and the release of said insurance company by plaintiff, as evidenced by the written release above set out, had the effect to release defendant from liability upon his covenant of warranty.

This case must be distinguished from those cases where an agreement is shown between the beneficiary

named in the policy of insurance and the person paying the premium to the effect that the latter shall have the benefit of the indemnity given by the insurer. There is no such agreement shown herein. The "policy insured plaintiff against loss or damage on account of any defect in the title to said premises and also insured plaintiff against any loss on account of any and all liens and encumbrances existing on or against said premises at the time of said conveyance".

"Where the liability of a party is fixed by contract or by statute, courts will not resort to equity to either enlarge or defeat them." *S. W. Ins. Co. v. Pac. Coast Casualty. Co.*, 92 Wash. 654 (159 P. 788).

In this state of the record, the settlement by the insured with the insurer did not release defendant from liability because of the breach of defendant's covenant against encumbrances.

Defendant calls attention to the case of *Barnes v. Mott*, 64 N. Y. 398 (21 Am. Rep. 625), and suggests that there the court held that by analogy the rules of suretyship should have been applied as between the judgment debtor's grantee and the surety on the appeal bond, although they were not co-obligors and their liabilities arose from wholly dissimilar relationships; and hence, by analogy, we should apply the rules of suretyship as between the judgment debtors' grantee and the insurance company whose policy is in favor of plaintiff only.

In the case of *Barnes v. Mott*, supra, the judgment was secondary to a mortgage upon the demised premises, the grantee in ignorance of the judgment, discharged the mortgage; an appeal from the judgment was prosecuted and, after affirmance, the holder of the judgment released the sureties upon the appeal bond from the lien of said judgment. The court restored the

mortgage and reinstated it as a lien on the mortgaged premises prior and paramount to the lien of the judgment. The court also held that the discharge of the sureties on appeal was in equity a discharge of the grantees' (plaintiffs') property from the lien of the judgment. We quote from the opinion in that case:

"The sureties upon the appeal intervened as volunteers, and by their interposition got time for the principal debtor to the prejudice of the prior sureties and of the plaintiffs, whose lands were bound for the judgment, and they must be considered in equity as in the same condition as any other sureties, voluntarily undertaking for the payment of the judgment. Their obligation inured to the benefit not only of the creditors, but of any and all who had become before them in any way sureties for the payment of the debt."

The instant case is an action at law and the insurance company cannot be considered as in the same condition as any other sureties. Its liability, under the statement of facts, was confined to plaintiff's claim of loss, and no claim in favor of defendant or any other person except plaintiff's upon the policy, as described in said stipulation of facts, could be maintained.

■ A contract guaranteeing a title is one of insurance rather than of suretyship, so that it is governed for purposes of construction by the rules applicable to other insurance contracts: Vol. 1, Cyc. of Ins. Law (Couch), § 49, note 5, citing *Minn. T. I. & Tr. Co. v. Drexel,* 17 C. C. A. 56 (36 U. S. App. 50, 70 Fed. 194); *Stensgaard v. St. Paul Real Estate Title Ins. Co.,* 50 *Minn.* 429 (52 N. W. 910, 17 L. R. A. 575); *N. Y. Trenton Potteries Co. v. Title G & Tr. Co.,* 50 App. Div. 490 (64 N. Y. Supp. 116) (see, also, 176 N. Y. 65, 68 N. E. 132); *Wheeler v. Real Estate T. Ins. & Tr. Co.,* 160 Pa. 408 (28 Atl. 849).

■ It is a settled principle of procedural law in this state that where an insurer pays a loss under a policy of insurance in a less amount than the insured's loss, the insurer and insured jointly may maintain an action at law against a wrongdoer, who negligently caused the loss: *Firemen's Ins. Co. v. Oregon Railroad Co.*, 45 Or. 53 (76 P. 1075, 67 L. R. A. 161, 2 Ann. Cas. 360); *Rorvik v. North Pac. Lum. Co.*, 99 Or. 58, 84 (190 P. 331, 195 P. 163); *Olds v. Von der Hellen*, 127 Or. 276, 293 (263 P. 907, 270 P. 497); *Salzwedel v. Pinkley*, 140 Or. 671, 673 (15 P. (2d) 718).

■ Defendant did not object to the omission to make the insurance company a party and thereby waived his right so to do: *Olds v. Von der Hellen*, supra; section 1-609, Oregon Code 1930.

It is urged that in order to warrant a recovery of substantial, as distinguished from nominal damages, it must be shown that the payment to remove the encumbrances was made under compulsion.

■ To this point, defendant cites note 44 A. L. R. 410. There, the general rule is stated as follows:

"Though a covenant against encumbrances is said to be a covenant in praesenti, breached as soon as made if breached at all, it is a uniform rule at law (though not in equity, see infra III b), that if the breach is the existence of a mortgage, judgment or other money lien against the premises, nominal damages only are recoverable, as for a technical breach, so long as the encumbrance remains undischarged and unenforced; in other words, no actual damages arise in favor of the covenantee merely because of the existence of such an encumbrance, until he has actually paid it off, either voluntarily or under compulsion, to save the property from forced sale, or been evicted because of it."

This clearly indicates that a voluntary payment will support a recovery of the amount paid.

■ Moreover, the foregoing stipulation of facts discloses that the holder of the judgment threatened to issue execution thereon and in the foregoing letter of January 30, 1929, defendant expressly declined to admit a liability because of the existence of said judgment.

■ The payment by the insurance company to plaintiff of $300 is an admitted fact in the case. By admitting the payment and failing to join the insurer as co-plaintiff, plaintiff waived the right to recover in this action the amount thus paid by the insurer. Plaintiff is bound by his admission respecting insurance, and the court should not deny defendant the benefit thereof: *Olds v. Von der Hellen,* supra. In awarding damages to plaintiff, the sum thus paid to plaintiff by the insurance company should be deducted from the amount plaintiff paid to remove the encumbrance upon his title.

It is ordered that the judgment of the circuit court be reversed and that this cause be remanded to said court with instructions to enter a judgment in favor of plaintiff against defendant, J. P. O'Brien, in the sum of $2,200 with interest thereon from the 5th day of February, 1930, at the rate of 6 per centum per annum and for plaintiff's costs and disbursements in the circuit court and in this court.

CAMPBELL, C. J., and BAILEY, BELT and ROSSMAN, JJ., concur.

RAND and BEAN, JJ., dissent.

---

RAND, J. (dissenting). Plaintiff brought this action against J. P. O'Brien and Annie L. O'Brien, his wife, to recover the sum of $2,500 as damages for an alleged violation of a specific warranty against encumbrances contained in a deed of conveyance executed by

the O'Briens to plaintiff. During the pendency of the action, Mrs. O'Brien died and, on stipulation of the parties, the action thereafter proceeded against J. P. O'Brien as sole defendant. The cause was tried to the court below without a jury on a stipulation of facts. From a judgment in defendant's favor, the plaintiff has appealed.

As stipulated the facts are as follows: On July 27, 1925, Coe A. McKenna and wife conveyed to J. P. O'Brien certain lots in the city of Portland. On August 2, 1926, O'Brien and wife conveyed the same lots to plaintiff by a warranty deed which contained a specific warranty against encumbrances. On November 5, 1924, prior to any of said transactions, a judgment had been rendered in the circuit court for Multnomah county against McKenna in favor of a third party and, on the same day, the judgment was duly docketed in the judgment lien docket of that county and thereby became a lien upon all of McKenna's real property in that county including the lots in question. Since said conveyance to O'Brien, McKenna has sold and conveyed to various other persons a part of his said real property and still retains a part thereof. The value of the property so conveyed by McKenna to other parties since his conveyance to O'Brien is far in excess of the amount of said judgment with interest and costs. After the entry and docketing of said judgment and on January 3, 1925, McKenna appealed to this court from said judgment. After the service and filing of his notice of appeal therein, McKenna filed an undertaking on appeal with the Globe Indemnity Company as surety, which contained the condition that if such judgment or any part thereof should be affirmed, the appellant would satisfy it so far as affirmed. Thereafter and on January 24,

1928, this court affirmed said judgment and the cause was remanded to the court below with directions to enter a judgment against McKenna and his said surety for the amount of said judgment with interest and costs. Thereafter and on March 6, 1928, a judgment on the mandate was entered in the circuit court for Multnomah county in accordance with said direction.

Said undertaking on appeal was given under section 7-504, Oregon Code 1930, and, since the judgment appealed from was for the recovery of money only, it operated to stay the judgment until the day on which the same was affirmed, as provided in said section.

It was also stipulated that at the time of the conveyance by defendants to plaintiff of the lots in question the defendants, at their own expense, purchased from the Title & Trust Company a title insurance policy which insured the plaintiff against any loss or damage on account of any defect in the title to the premises so conveyed to him and also against any loss or damage on account of any and all liens and encumbrances then existing against the premises so conveyed, and that, prior to the affirmance of said judgment, in consideration of the sum of $300 then paid to plaintiff by the Title & Trust Company, the plaintiff, without defendants' knowledge or consent, released said company from any and all liability under its said policy.

It is further stipulated that, after said judgment had been affirmed and judgment on the mandate entered, the Globe Indemnity Company, McKenna's said surety, paid said judgment in full and had the same assigned to one of its own agents and that thereafter this plaintiff, without the knowledge or consent of the defendant and against his written protest, paid to said assignee the sum of $2,500 and thereupon obtained from

him a discharge and release of said property from the lien of said judgment, which said last mentioned payment was so made by plaintiff after the commencement of this suit and on February 5, 1930, this action having been commenced on January 14, 1929, a year prior to the time when said payment was made.

The stipulation contains copies of the release executed by plaintiff to the Title & Trust Company, of the two letters of the defendants protesting against the payment by plaintiff of the said sum of $2,500, and of the release executed by Harry L. Raffety, the agent of the surety company. These writings so stipulated to are in the following words and figures, to wit:

"In consideration of the payment to me of $300.00 by Title and Trust Company, of Portland, Oregon, the receipt of which is hereby acknowledged, I, the undersigned Frank Decarli, do hereby release said Title and Trust Company from all liabilities, claims and demands now existing or hereafter to accrue under their policy of Title Insurance, No. 90907, insuring the title to Lots 1, 2, 3, 4 and 5, Block 1, Goodmorning Addition to East Portland, in the City of Portland, County of Multnomah and State of Oregon, and upon any policies hereafter to be issued on said premises or any portion thereof, but this release is expressly limited to such liabilities, claims or demands as may arise under claim of unmarketability of the title to said premises or any portion thereof, by reason of the existence of judgment in the Circuit Court of the State of Oregon for Multnomah County against Coe A. McKenna doing business as Coe A. McKenna & Co. in favor of E. R. Stark and Martha Stark in the sum of $4,500, with interest and cost, which judgment was entered 5 November 1924 in Docket 20 of the Judgment Lien Dockets of said Court, on page 209.

Dated 4 February 1927.

Frank Decarli."

"Registered

Portland, Ore., January 30, 1929

Mr. Frank DeCarli

Portland, Oregon.

Dear Sir:

About January 11, 1929, you commenced an action against the undersigned in the Circuit Court of the State of Oregon for Multnomah County, Case No. M-1810, in which you seek to recover damages for an alleged breach of a warranty against incumbrances contained in a deed dated on or about August 2, 1926, executed by the undersigned, conveying to you Lots 1 to 5, inclusive, in Block 1, Good Morning Addition to East Portland, Multnomah County, Oregon.

The alleged incumbrance which you claim to have been a lien on said property at the date of said deed is a certain judgment recovered in the Circuit Court of the State of Oregon for Multnomah County, by E. A. Stark and Martha Stark, against Coe A. McKenna.

"The purpose of this letter is to inform you that the holder of said judgment cannot enforce payment of said judgment by levying upon the lots, or any thereof, above mentioned. This is so for several reasons, some of which involve facts as to which I have not completed my investigation. When I have obtained the further information desired I will furnish it to you if you desire that I shall do so.

"Because of the facts stated, if you pay said judgment or any part thereof you will do so at your own peril in so far as any alleged liability against the undersigned is concerned. In making such statement we are not admitting that there is or has been any such liability on our part.

Very truly yours,

(Signed) J. P. O'Brien,

(Signed) Annie L. O'Brien."

"Registered

Portland, Oregon, December 2, 1929

Mr. Frank DeCarli

232½ Washington Street,

Portland, Oregon.

Dear Sir:

On January 30, 1929, we wrote you concerning the action which you had commenced against us in the Circuit Court of the State of Oregon for Multnomah County, Case No. M-1810, in which you seek to recover judgment for an alleged breach of a warranty contained in a deed executed by us to you on or about August 2, 1926.

"In that letter we stated that the property so conveyed to you could not be levied upon for the satisfaction of the judgment which you alleged to be an encumbrance upon said property. The reasons for this statement are fully explained in the answer which we have filed to your complaint in that action.

"Recently your attorneys have advised our attorneys that you expected voluntarily to pay said judgment and then recover from us the amount so paid by you. We reiterate our notice to you not to pay said judgment or any part thereof. We hereby offer to defend, at our expense, you and the said property against any liability for the satisfaction of said judgment or any part thereof, and we hereby assert the right and demand the privilege of thus defending you and said property against any such alleged liability on account of said judgment.

"We are sending a duplicate of this letter to your attorneys Messrs. Joseph, Haney and Littlefield and John C. Veach.

Very truly yours,

(Signed) J. P. O'Brien,

(Signed) Annie L. O'Brien.

Messrs. Joseph, Haney & Littlefield and
John C. Veach
Yeon Building, Portland, Oregon.''

"Partial Release of Judgments

"Know all men by these presents that Harry L. Raffety, the undersigned, in consideration of the sum of $2500.00 to him paid by Frank De Carli, does hereby release the following described property in Multnomah County, State of Oregon:

"Lots 1, 2, 3, 4 and 5, Block 1, Goodmorning Addition to East Portland, in the City of Portland from the lien of the certain judgment docketed in the State circuit court on the 5th day of November, 1924, and on the 6th day of March, 1928, in Docket 20 page 209, and Docket 24 page 132, respectively, in an action entitled E. R. Stark, et al., vs. Coe A. McKenna, et al., one for $4500.00, $165.35 costs and one for $4666.35, 6% from 6 November, 1924; $486.60 Supreme Court costs, which said judgments were duly assigned to Harry L. Raffety.

"In witness whereof, the said Harry L. Raffety has herewith set his hand and seal this 5th day of February, 1930.

Harry L. Raffety.''

It was also stipulated: ''That prior to the payment of said $2500.00 and the execution of said release, said Harry L. Raffety had threatened that he would cause execution upon said judgments to be issued and levied upon the premises described in said release, but no levy was in fact made upon said premises or any part thereof. That the payment of said sum of $2500.00 was made by plaintiff on February 5, 1930, and after receipt of the notices mentioned in paragraph 9 of this stipulation'' (referring to the two letters copied above).

It is also stipulated that the defendants would not pay the judgment nor any part thereof, although plaintiff had requested them to pay the same and to remove said encumbrance, and that they have not reimbursed the plaintiff for any of the sums expended by him. It is further stipulated that on November 5, 1924, (the date when the judgment in the circuit court was

entered against McKenna), and at all times thereafter until August 3, 1926, (the date on which the O'Brien deed was delivered to plaintiff), Coe A. McKenna owned and was shown by the records of Multnomah county, Oregon, to own a number of parcels of land and lots other than the property described in paragraph 2 of the stipulation (the premises conveyed to plaintiff), one of which said parcels of land said Coe A. McKenna still owns and the remainder thereof were sold and conveyed by said McKenna to different parties at various times after July 27, 1925; "that during all of said times said other parcels of land and lots had a fair market value over and above incumbrances against the same in excess of the amount of the judgment mentioned in paragraph 5 of this stipulation and the costs which have accrued upon the sale of the same under execution on said judgment; but that no one of the other parcels of land so owned by Coe A. McKenna, which were free of incumbrances during any of the period in this paragraph mentioned, had a value equal to the amount of the judgment mentioned in paragraph 5 of this stipulation, and the costs which would have accrued upon the sale of the same under execution on said judgment; and that no one of the unincumbered parcels of land so owned by Coe A. McKenna during the period in this paragraph mentioned had a value as great as the value of the property described in paragraph 2 of this stipulation".

It was also stipulated that the covenants contained in the deed are as follows:

"And the grantors above named do covenant to and with the above named grantee, his heirs and assigns, that they are lawfully seized in fee simple of the above granted premises, that the above granted premises are free from all incumbrances, no exceptions, and they

will and their heirs, executors and administrators, shall warrant and forever defend the above granted premises and every part and parcel thereof against the lawful claims and demands of all persons whomsoever.''

Plaintiff assigns as error the entry of judgment in favor of defendant and contends that, under the facts as stipulated, the plaintiff was entitled to recover judgment against the defendant for the amount paid for the reason that the covenant against encumbrances was broken when made since there was an actual encumbrance in existence at that time. In support of this contention, he invokes the well recognized rule that a covenantee, under a covenant against encumbrances where there is an actual encumbrance not excepted by the deed, is not required to wait until his possession is disturbed but may pay off the encumbrance and recover from his covenantor the consideration thus paid. This rule has been frequently recognized and approved in this state: *Corbett v. Wrenn,* 25 Or. 305 (35 P. 658), and *Henry v. Hand,* 36 Or. 492 (59 P. 330). See also *Pearson v. Richards,* 106 Or. 78 (211 P. 167). Although we think it is equally well established in this state that, unless and until the covenantee has paid off the encumbrance, he can recover nominal damages only.

The defendant, however, contends that because of the facts stipulated this case comes within an exception to that rule. He contends that the plaintiff was not compelled to pay any sum whatever in order to extinguish this encumbrance; that plaintiff's possession was not disturbed, and could not have been disturbed if the plaintiff had paid no sum of money whatever, for the reason that the plaintiff could have successfully resisted any levy upon the lands conveyed until all other parcels of land that were subject to the lien of

the judgment had been levied upon and sold in the inverse order of their alienation, and the judgment would thereby have been satisfied without any levy or sale being made or attempted of the premises conveyed to plaintiff by defendant.

The defendant also insists that both the plaintiff and the defendant were fully protected against the lien of the judgment by the policy of the Title & Trust Company, which had been purchased by the defendant for their mutual protection, and that the arbitrary release and discharge of that policy by plaintiff without defendant's knowledge or consent operated to discharge the defendant from any liability under his said covenant.

It is settled law in this state that where a tract of land subject to a general lien, as the lien of the judgment in the instant case, has been conveyed by the judgment debtor in separate tracts and to different persons, the judgment creditor, if obliged to resort to the issuance of an execution, must satisfy his judgment by a sale of the tracts conveyed by the judgment debtor in the inverse order of their alienation. That principle was announced in *Knott v. Shaw*, 5 Or. 482, and was followed and approved in *Oliver v Wright*, 47 Or. 322 (83 P. 870), and, in respect to a lien of this character, is the settled law of this state. That principle is applicable to sales made by the judgment debtor of separate tracts and parcels of land against which such a lien exists: *National Savings Bank v. Creswell*, 100 U. S. 630 (25 L. Ed. 713).

It is suggested, however, that because a vendor who has conveyed land with covenants of warranty may enjoin the enforcement of an execution against the conveyed lands where a sale thereof, under execution,

would create a cloud on the purchaser's title, to the same extent that the vendee can, the defendant could have protected himself against the lien of this judgment as well as the plaintiff could and that, since the defendant failed to do so, he cannot now complain of plaintiff's failure to invoke that remedy.

There is no merit in this contention since the plaintiff had not been evicted nor his possession in any way disturbed and no execution had been issued upon the judgment. There were many parcels of land besides those of the plaintiff against which the lien of the judgment had attached at the time of its entry and docketing. The judgment creditor, therefore, if the lien of the judgment was still in force, had the right to have an execution issued and a levy and sale made of sufficient thereof, including the lands of the plaintiff, if necessary, to satisfy his judgment and neither the plaintiff nor the defendant could deprive him of that right. But until an execution had been issued and a levy had been made upon the lands owned by the plaintiff, no cause of suit could exist in favor of the plaintiff or the defendant. It could only be after the judgment creditor had taken some legal steps to subject plaintiff's premises to the lien of the judgment that the plaintiff or the defendant would be entitled to have the other parcels sold to satisfy the judgment in the inverse order of their alienation. That condition never arose and hence neither the plaintiff nor the defendant ever had the opportunity to insist upon that right.

In so far as the lien of this judgment was enforceable against plaintiff's premises, it was an encumbrance against said premises, and plaintiff was doubly protected against any possible loss which might arise therefrom; first, by the covenant in his deed against encum-

brances, and, second, by the title insurance policy that had been issued by the Title & Trust Company. Plaintiff contends that he was entitled to choose whether to look to one or the other for reimbursement in case of loss. With this we agree, but he failed to exercise such choice. Had he chosen, as he had a right to do, to look to defendant for his remedy in case of loss, then upon the payment of such loss, the defendant, under well-recognized equitable rules, would have been entitled to be subrogated to plaintiff's rights as against the Title & Trust Company. Instead of following that course, however, plaintiff chose to pursue his remedy against both the Title & Trust Company and the defendant, and, while exercising that choice, he compromised his claim against the Title & Trust Company for $300 when he knew that the Title & Trust Company was obligated by its policy to pay the entire loss, if any, by reason of the encumbrance. He did this without consulting the defendant and without defendant's knowledge or consent and thereby forever put it beyond the power of the defendant to be reimbursed for any loss which might be sustained by plaintiff from the encumbrance.

Under those circumstances, we think that the discharge by plaintiff of the Title & Trust Company from liability under its policy operated as a matter of law to release and discharge the defendant from any liability under the covenant in the deed to plaintiff against encumbrances and that plaintiff's subsequent payment to Raffety of $2,500 was a voluntary payment upon his part for the recovery of which no action will lie against the defendant.

" 'Title insurance is an agreement whereby the insurer, for a valuable consideration, agrees to indemnify the insured in a specified amount against loss through

defects of title to real estate wherein the latter has an interest, either as purchaser or otherwise.' Frost, Guaranty Ins. sec. 162. A contract of title insurance is also defined as 'a contract to indemnify against loss through defects in the title to real estate or liens or encumbrances thereon.' 1 Cooley, Briefs on Insurance, p. 712.''

*Foehrenbach v. German American Title & T. Co.,* 217 Pa. 331 (66 Atl. 561, 12 L. R. A. (N. S.) 465, 467, 118 Am. St. Rep. 916). In that case the court said:

"The sole object of title insurance is to cover possibilities of loss through defects that may cloud or invalidate titles. It is for the assumption of whatever risk there may be, in such connection, that the premium is paid to, and accepted by, the company which issues the policy. Title insurance is not mere guess work, nor is it a wager. It is based upon careful examination of the muniments of title, and the exercise of judgment by skilled conveyancers. The quality of a title is a matter of opinion, as to which even men learned in the law of real estate may differ. A policy of title insurance means the opinion of the company which issues it, as to the validity of the title, backed by an agreement to make that opinion good, in case it should prove to be mistaken, and loss should result in consequence to the insured.''

"The insurer under a policy of title insurance is not a surety.'' 62 C. J. 1061.

Hence, as the Title & Trust Company was not a surety for defendant, it could not, if it had paid any loss under the policy, have been subrogated to any right or security which the plaintiff himself possessed against the defendant, and, since the defendant had contracted for the insurance and paid the premium, the insurance thereby obtained indemnifying the plaintiff against loss was as much for defendant's benefit as for the benefit of the plaintiff regardless of the question of

whether or not the policy was enforceable by the defendant or not.

A covenant against encumbrances is also a covenant for indemnity only and the covenantee can recover no more than what he was compelled to pay in order to extinguish the outstanding encumbrance: *Corbett v. Wrenn,* 25 Or. 305 (35 P. 658). "Or, in case he can not so extinguish it, the amount of injury which he may be considered to have suffered from its existence * * * But though no loss has been sustained at the time of bringing suit, he may recover nominal damages, since the covenant is regarded as broken as soon as made, when there is any outstanding incumbrance." 2 Tiffany on Real Property, (2d Ed.) section 455. "If there be an incumbrance, the covenant, being in praesenti, is broken as soon as made." 3 Washburn on Real Property, (5th Ed.), p. 489, *p. 658. But as Washburn says:

"* * * incumbrances are so various in their description and character, that the same rule cannot well be applied to all. Some of them, like an existing right of way over the premises, or a permanent easement, are as much incumbrances when the deed is made as they ever can be, and, of course, actually diminish and detract from the value of the estate at that time. Other incumbrances, like an existing right of dower or an outstanding mortgage, may or may not impair the value of the premises conveyed, according as these claims are or are not enforced. The person entitled to dower may die before having it set out, or the mortgagor may pay the mortgage debt and relieve the estate. If, in the cases first supposed, the covenantee sues upon his covenant, he recovers the damage which the estate sustains by the existence of such a permanent incumbrance; in the other, he can only recover nominal damages until it shall have been ascertained that the widow or mortgagee will enforce their claim, and he has paid or satisfied the same."

In *Henry v. Hand,* 36 Or. 492 (59 P. 330), the court, speaking through Mr. Chief Justice WOLVERTON, quoted with approval from Rawle as follows:

"But 'the covenant against incumbrance  *  *  * is yet,' says Rawle, 'as respects the measure of damages, treated purely as a covenant of indemnity; and it is well settled that if the incumbrance has inflicted no actual injury upon the plaintiff, and he has paid nothing toward removing or extinguishing it, he can obtain but nominal damages, as it is considered that he shall not be allowed to recover a certain compensation for running the risk of an uncertain injury;' Rawle, Cov. Title, p. 288.  See, also, De La Vergne, v. Norris, 7 Johns. 358, 5 Am. Dec. 281; 8 Am. & Eng. Enc. Law, 2 ed., p. 180."

In this connection it must be remembered that, unlike the ordinary case, the defendant was under no personal obligation to pay the judgment.  It was only in so far as the judgment affected the conveyed premises that the payment of it could be of any concern to the defendant and, since it was stipulated that the payment was not made by plaintiff until about one year after the commencement of the action and not until the plaintiff had been twice notified by the defendant that there was a good defense against the enforcement of the lien against the premises of the plaintiff, and defendant had offered plaintiff to pay all expenses in making such defense if plaintiff would permit him to do so, and that plaintiff had refused the offer and voluntarily made the payment against the protest and objection of the defendant, under these circumstances, we think that the defendant was arbitrarily deprived of a valuable property right by the wilful misconduct of the plaintiff and that if any one is to sustain the loss it should be the plaintiff and not the defendant,

he having voluntarily put it out of the power of the defendant to make a defense which, under the law, could have been done had he been permitted to do so.

Under this view, it is unnecessary to pass upon the question of whether, by reason of a stay bond having been given, the lien of the judgment was not thereby destroyed and also the question whether, in the absence of a statute as is the case in this state, the payment by the Globe Indemnity Company of the judgment was not a full and complete satisfaction of the judgment and an extinguishment of any lien, if any such was in existence at the time.

For these reasons, the judgment should be affirmed.

BEAN, J., concurs in this dissent.