(81 South. 612)

### MONTGOMERY BANK & TRUST CO. v. KELLY. (3 Div. 379.)

(Supreme Court of Alabama. May 1, 1919.)

1. PLEADING ⊚⇒36(2)—ADMISSIONS IN COMPLAINT.

Where one of the counts, in action on a note against indorser, admitted partial payments thereon, although another count on the same note omitted such admission, and plaintiff's counsel stated that defendant was entitled to the credits thereon, plaintiff could take nothing from the fact that no plea of payment was interposed to avail of the payments admitted by him.

2. APPEAL AND ERROR ⊚⇒194(1)—PLEA—OBJECTIONS.

Where, in suit against indorser on notes, defendant's assertion in one plea that part of the amount expressed in one note was simply an act of accommodation to plaintiff, which arose out of an antecedent debt that maker of note owed plaintiff, with which defendant had no previous connection, was not referred to in the oral charge nor in any of plaintiff's special requests for instruction, and the demurrer addressed to the plea took no objection to the sufficiency of the plea in respect to such assertion, no consideration on appeal could be given the sufficiency of the plea as to such assertion.

3. PLEDGES ⊚⇒29—DISCRETION OF PLEDGEE. TO SELL PLEDGED PROPERTY.

In the absence of a special agreement, a pledgee is invested with a discretion with respect to a sale of the subject of the pledge, and is not bound to sell collateral in order to avoid liability for its depreciation occurring after the maturity of the debt, to secure which the property is pledged.

4. PLEDGES ⊚⇒29—DUTY TO SELL PLEDGED PROPERTY.

The rule giving pledgee discretion as to sale of pledged property does not apply, where pledgee by contract agrees to sell the pledged property upon default in payment of the debt thereby secured; for in such case the duty of the pledgee is fixed by the contract.

5. BILLS AND NOTES ⊚⇒258—RIGHT OF INDORSER—DUTY TO SELL PLEDGED PROPERTY.

No notice or demand by indorser of pledgor's note was prerequisite to pledgee's liability for breach of its duty under contract with such indorser to sell the pledged property upon default in payment of the debt secured thereby.

6. BILLS AND NOTES ⊚⇒258—DUTY TO SELL. PLEDGED PROPERTY.

Pledgee's liability for failure to comply with its contract with indorser of pledgor's note to sell the pledged property upon default in payment of the debt secured thereby was not affected by the fact the indorser knew of such failure to sell and remained inactive in the premises.

7. BILLS AND NOTES ⊚⇒537(1)—MARKET VALUE OF PLEDGED PROPERTY—QUESTION FOR JURY.

Where defense of indorser on notes was breach of payee's agreement to sell property

---

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

pledged to secure the note upon default in payment of the note, and the court charged that defendant would not be released from all liability to plaintiff unless the evidence showed that by such breach defendant sustained loss or damage equal to or greater than his liability on the notes, the market value of the collateral at time of default in payment of the note *held* for the jury under the evidence.

8. DAMAGES ⚬⚬62(4) — AVOIDABLE CONSEQUENCES.

Where pledgee breached its contract with indorser of pledgor's note to sell pledged property upon default in payment of the debt secured thereby, the duty to mitigate damages did not obligate the indorser, either to sell the property himself, since he had no right to its possession, nor to pay the debt himself in order to secure the property and then sell it, since this would require him to perform the contract for the party breaching it.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Action by the Montgomery Bank & Trust Company against J. W. Kelly as indorser of certain notes. Judgment for defendant, and plaintiff appeals. Affirmed.

The following are charges requested by and refused to plaintiff:

(4) The court charges the jury that if plaintiff agreed to sell the collateral pledged with the note sued on if they were paid at their maturity, and it failed to do so, then defendant would be entitled to set off against his liability on said note such loss or damage as he sustained from plaintiff's failure to sell said collateral according to said agreement, but it was the duty of the defendant to reduce said loss or damage by paying said note and selling said collateral to the best reasonable advantage.

(5) If the plaintiff agreed to sell the collateral pledged with the note sued on if they were paid at maturity and it failed to do so, then defendant would be entitled to set off against his liability on said notes only for the difference between what plaintiff would have realized from the sale of said collateral according to said agreement and what the defendant would have realized therefrom if he had paid said note and sold said collateral within a reasonable time after the maturity of said note.

(7) If the plaintiff agreed with defendant to sell the collateral pledged with the note sued on if they were not paid at maturity by the maker and plaintiff failed to do so, the amount of the damage to which the defendant would be entitled to set off against his liability on said note would be the difference between what plaintiff would have realized from the sale of said collateral according to said agreement and what defendant would have realized if within a reasonable time after the maturity of said notes he had sold said collateral.

(8) If plaintiff agreed with defendant to sell the collateral pledged with the note sued on if they were not paid at maturity by the maker, and it failed to do so, then it was the duty of the defendant to pay said notes and take said collateral and sell the same within the reasonable time after the maturity of the said note, and if he failed to do so he could not hold the plaintiff liable for loss or damage on account of the failure of plaintiff to sell said collateral.

Ball & Beckwith, of Montgomery, for appellant.

Rushton, Williams & Crenshaw, of Montgomery, for appellee.

McCLELLAN, J. [1] The plaintiff (appellant) sued the defendant (appellee) on two promissory notes. These notes were for $503.97 and $2,868.96, respectively. They were executed by R. O. Blakey to the defendant on, to wit, June 4, 1909. They respectively matured on October 2 and 6, 1909. The defendant indorsed them to the plaintiff on or about the date of their execution, under limitary circumstances, according to defendant's contention, to be stated. The complaint, as amended, contained four counts. The first and third counts declare on the note for $503.97, and the second and fourth counts upon the note for $2,868.96. The second count "admits payments on said note as follows: July 6, 1909, $86; January 7, 1910, $87; February 15, 1911, $80.80; July 2, 1911, $87; January 20, 1912, $87." Now, the fourth count omits the admission just quoted. Upon the considerations to be indicated, we may, for convenience, at this point eliminate that feature of the argument for appellant wherein resultant advantage is claimed because of the absence of any plea of payment, partial or total. There was, in fact, no plea of payment. It appears with certainty that the note described and declared on in the fourth count was the same note described and declared on in the second count, where the credits listed were admitted. It is recited in the bill of exceptions that the "plaintiff admitted the credits shown * * * on one of said notes." Furthermore, it appears from the bill of exceptions that in response to inquiry by the court upon the conclusion of the oral charge, counsel for plaintiff said:

"I think possibly you might be a little more accurate, that those credits should be given as partial payments. My point is that in any event they are entitled to those credits on the notes."

Under the circumstances presented by the pleading, and record otherwise, the appellant cannot take anything from the fact that no plea of payment was interposed to avail of the payments admitted by the appellant. 3 Sedgwick on Dam. (9th Ed.) § 1074.

[2] The defendant filed six special pleas. That numbered 6 was stricken on plaintiff's demurrer. There was no general traverse of the complaint. The trial proceeded throughout on the theory that the defendant was liable as an indorser on the notes, unless the matter set up in his pleas partially or whol-

---

ly exonerated him. All of these pleas (except the sixth that was stricken as stated) were, in nature, pleas of set-off and recoupment, consequent, in allegation, upon a breach by plaintiff of an agreement entered into by the plaintiff and defendant as a part of the contract resulting in the indorsement of these notes to the plaintiff, an engagement that will be later recited. While in plea 5 the defendant asserted that $500 of the amount expressed in the note for $2,-868.96 (described in the .second and fourth counts) was simply and only an act of accommodation to the plaintiff (which arose out of an antecedent indebtedness, in the amount of $500, that Blakey owed the plaintiff, with which defendant had no previous connection of any kind), yet neither in the oral charge of the court nor in any of plaintiff's special requests for instruction was any reference made to this particular feature of plea 5; and the demurrer addressed to plea 5 takes no objection to the sufficiency of the plea in the respect of the feature mentioned. Doubtless, the plea was regarded, because of its possession of a feature common to the other pleas—a feature that was predicated of the breach of contract to which allusion has been already made—as presenting the cross-claim asserted in the other pleas. No consideration can be given the sufficiency of plea 5 in the partial aspect to which we have referred.

The agreement upon which the pleas of set-off and recoupment relied is, in substance, this: Blakey being unable to pay for capital stock he had purchased in plaintiff bank had become indebted on that account through notes (one for $500 and another for $2,350) executed by him to defendant who, in turn, indorsed them to plaintiff. These notes were secured with shares of the capital stock in the plaintiff. Later, when Blakey had not paid the notes then held by the plaintiff, the president of the plaintiff presented to defendant for his execution renewal notes. These are the notes now sued on. It is averred that the president of the plaintiff agreed with defendant that if he would sign these notes (collateral security of which Blakey had put up in the shape of stock in the plaintiff of a face value of $3,300), the plaintiff would, if Blakey did not pay the renewal notes at their maturity, sell the stock. It is further averred that Blakey defaulted; that the agreement stated was not kept by the plaintiff; that plaintiff failed to sell the stock; and that the stock, then and for a while afterwards, was worth par, subsequently becoming practically worthless. The effect of the agreement was that the plaintiff assumed the definite obligation to sell the stock upon the nonpayment of the notes at their maturity and credit proceeds on the notes; this apart .from the further positive averment in plea 4 that "the plaintiff would not call upon him (i. e., defendant) to pay the same, * * *" in the event of default.

[3-5] It is true that in the absence of a special agreement a pledgee is invested with a discretion with respect to a sale of the subject of the pledge, and is not bound to sell collateral in order to avoid liability for its depreciation occurring after the maturity of the debt to secure which the property is pledged. 31 Cyc. 828; Lake v. Little Rock Trust Co., 77 Ark. 53, 90 S. W. 847, 3 L. R. A. (N. S.) 1199, 1200, 7 Ann. Cas. 394, note, pp. 395, 398; 21 R. C. L. 689. Where, as here, the pledgee, or one standing in that relation, assumes by contract a definite, positive obligation to sell the collateral upon default in the payment of the debt thereby secured, the rule stated does not apply, for, in such circumstances, the contract fixes the obligation and duty of the pledgee in the premises. Cooper v. Simpson, 41 Minn. 46, 42 N. W. 601, 4 L. R. A. 194, 16 Am. St. Rep. 667. Since the contract averred stipulated for a sale upon default in payment of the notes, and affirmatively bound the plaintiff to do so, no discretion in the premises, like that the common law recognizes in the absence of special agreement, was left in the pledgee, plaintiff; and no notice or demand by the defendant was a prerequisite to plaintiff's liability if the plaintiff breached its contractually assumed, positive duty to sell upon the happening of the event stipulated.

The decision in Taggard v. Curtenius, 15 Wend. (N. Y.) 155, cited on appellant's brief. is readily distinguishable from the case under review. There the plea set up, in bar of a recovery on the notes, negligence on the part of the pledgee in respect of the disposition of the property pledged; and the court there clearly indicated its opinion that a different question would have arisen had the plea sought to effect a set-off. Furthermore, there was no special agreement superseding the common-law rule. The other decisions cited on brief for appellant must be discriminated on those considerations. The text in Jones on Pledges, § 602, defines the common-law rule, unaffected by a special agreement binding the pledgee to sell in a definite event. The other citation, on brief for appellant, of section 728 of Jones on Pledges, recognizes the rule applicable to cases where, as here, there is a special agreement governing the rights of the parties.

The pleas, 1 to 5, inclusive, were not subject to the demurrers interposed. There was no error in overruling these demurrers.

[6] The application of the stated doctrine to the rulings of the court in sustaining defendant's demurrers to replications seeking to avoid the matter of set-off asserted in pleas 1 to 5, inclusive, justified this action of the trial court. If, as the pleas aver, the plaintiff assumed a definite, positive, contractual obligation to sell the stock upon default, nothing more was required of the defendant

in order to fix liability upon the plaintiff if it failed to discharge the duty so assumed. Under the contract averred the duty was on the plaintiff, not the defendant, to sell as the agreement stipulated. Hence this duty was not modified or discharged by the fact, not stipulated against in the agreement, that defendant knew (if so) that the plaintiff had not sold the stock as it engaged to do. Notice or demand to sell, given or made by the defendant, not being prescribed in the agreement, the obligation assumed by the plaintiff could not be qualified by defendant's mere inaction, even though he was fully advised of the circumstances. There was no error in sustaining the demurrers to the replications in question.

Since defendant was under no obligation to sell the stock, the court properly disallowed the question, propounded to defendant by plaintiff, which sought to elicit the statement that defendant made no effort to sell the collateral.

[7] The plaintiff requested and the court gave this special instruction to the jury:

"The court charges the jury that the defendant would not be released from all liability to plaintiff on the notes sued on by the failure of plaintiff to sell said collateral according to the agreement claimed by the defendant in regard thereto, unless the evidence shows that the defendant thereby sustained loss or damage equal to or greater than the amount of defendant's liability on said notes."

The value of the collateral was one of the vital issues under the averments of the pleas. The plaintiff testified that he knew the stock "was selling around par in October, 1909; * * * it had no market value" on July 23, 1913. A witness for plaintiff testified that he "bought $4,000 worth of stock from him (i. e., Mr. Strassburger), and paid him 97 and 99, I should say that was in 1910." Mr. Strassburger testified:

"There were no sales of stock of that company during the fall of 1909; that is, October and November, but I should say the market value was then 97 cents on the dollar and in the first part of 1910 from 95 to 97. * * * In October, 1909, there was an active market for the stock at 97, which continued until about 1911 * * *."

What the market value of the stock was at or about and after the maturity of the notes was a question for the jury. There was, as appears, evidence tending to show that its value was "about par," authorizing a conclusion that its value was par; and there was evidence of a value, and an active market therefor, at 97. It cannot be affirmed as a matter of law that the value of the stock was par or below par. We are therefore unable to agree with counsel for appellant that in no event could the damage suffered by the defendant—as asserted in his pleas of set-off—have equaled the aggregate indebtedness, represented by these notes, $3,-372.93, at the maturity thereof, which had been, even before maturity, reduced by an admitted credit of $86 as of July 6, 1909. There is nothing in the record to indicate that any obligation for attorney's fees had been incurred in respect of the collection of these notes until many months after the breach of the agreement alleged in the pleas had occurred.

[8] The report of the appeal will reproduce plaintiff's special requests for instructions numbered 4, 5, 7, and 8, which were refused by the court. All of the requests except that numbered 7 proceeded on the theory, in part, that, notwithstanding the acceptance by the jury of the defendant's contention that the contract obligated the plaintiff to sell the stock upon the happening of the stated event, a duty rested on the defendant—the plaintiff failing to sell the stock—"to pay the notes" and sell the stock. As before mentioned, it was averred in plea 4—addressed to the second count and reciting the agreement defendant asserted was breached by the plaintiff—that " * * * if he [i. e., defendant] would indorse said note, plaintiff would not call upon him [defendant] to pay the same, but that in the event said note was not paid, when due, it would sell said certificate of the capital stock of the plaintiff. * * *" On cross-examination, the defendant testified that the agreement included the assurance, inducing defendant's then given indorsement of the Blakey renewal notes, that defendant "would never be called upon to pay it"; the collateral, the capital stock of the plaintiff, being the source, when sold as agreed, from which payment should be made. Aside from any other consideration that justified the action of the court, it is manifest that the special charges requested by and refused to the plaintiff, wherein it was asserted or assumed that defendant's duty or obligation was "to pay the note," without taking account of the quoted feature of plea 4 and of the testimony tending to support it, fell short of defining the issues tendered by plea 4, and hence, if given, would have invaded the province of the jury. The other special request (numbered 7) refused to plaintiff, did not include payment of the "said note" as a factor in or condition to the asserted or assumed obligation or duty resting on defendant to sell the "collateral," but did proceed on the theory that there was a duty on defendant himself to sell the collateral after breach of the agreement by the plaintiff. What has been already said in reference to the sufficiency of the pleas would suffice to justify the court in refusing charge numbered 7. However, the appellant in argument invokes the application of the rule that, in proper cases, requires one who has been injured by a breach of a contract or tortious wrong to

exercise ordinary care and incur reasonable expense to render the injury as light as such prudence and exertion will effect, citing Watson v. Kirby, 112 Ala. 436, 445, 20 South. 624; Sou. Hdw. Co. v. Standard, etc., Co., 158 Ala. 596, 601, 48 South. 357; Sloss v. Mitchell, 161 Ala. 283, 49 South. 851; s. c., 181 Ala. 601, 61 South. 934; Dickerson v. Finley, 158 Ala. 149, 166, 48 South. 548, 13 Cyc. pp. 72, 73.

The doctrine is familiar (17 C. J. p. 767 et seq.; 8 R. C. L. p. 442 et seq.; 1 Suth. on Dam. [4th Ed.] § 155), and is stated and illustrated in the decisions above cited. Apart from their service in recognizing the rule, these decisions are without influence in the different circumstances here involved. Under the apt title "Avoidable Consequences," Sedgwick, in his work on Damages (volume 1 [9th Ed.] chapter X, § 201 et seq., p. 385 et seq.), has made a serviceable contribution to the learning on this subject, reducing the statement of the doctrine to its original elements and lucidly defining the reason, the quality, and the measure of the care and diligence thereby enjoined upon the party who has been injured by tortious wrong or by the breach of a contract—the rule being, where applicable, the same in both classes of cases. Sedgwick on Damages, § 204.

The rule does not, however, apply in all cases; the presence of the conditions in the particular case determining its application. 1 Suth. on Dam. (4th Ed.) §§ 90, 155. Under the rule, the injured party's obligation is to exercise the reasonable care and diligence an ordinarily prudent man would exercise to avert the enhancement of the damage proximately consequent upon the wrong or breach of contract committed, or to minimize the damage that might result if such measure of care and diligence was not exerted. The obligation or duty is not upon the injured party to perform the contract the other party has breached, since, if that was the injured party's obligation or duty, the result would be to reward the party breaching the contract and transfer to the injured party the burden of the other party's violated obligation. Ash v. Soo Sing Ling (Cal.) 170 Pac. 843, 846; 1 Suth. on Dam. § 89, p. 316.

The obligation of the derelict party is imposed by the contract, while the obligation of the injured party under the rule, where applicable, is resultant and relative, dependent upon the reasonable care and diligence he should have exercised in the circumstances. The doctrine cannot be accorded effect or application if the opportunity to exert the requisite care and diligence was not open to the choice, the option, of the injured party, measuring his possible obligation by the expectation of what an ordinarily prudent man would have done under like circumstances. 17 C. J. p. 770; 1 Suth. on Dam. supra; 1 Sedgwick, § 202; 8 R. C. L. p. 442 et seq., §§ 14, 15, under title "Damages."

Assuming (for the occasion) defendant's knowledge that the plaintiff had breached the contract averred in the pleas, the rule cannot be invoked in the circumstances disclosed by the record for two, if not other, reasons, viz.: First, because to exact of the defendant the payment of the debt and the sale of the stock would result in requiring, in the interest of the violator of the contract who had the right to retain the possession of the stock, the performance thereof by the injured party; and, second, because the opportunity to sell the stock, and thereby avoid damnifying consequences resulting from the breach, was not open to the choice, option, or exercise of the defendant, the injured party, the plaintiff being in the exclusive possession of the stock. If this plaintiff's contractual obligation had been breached through a conversion of the stock, the subject of the pledge, by a sale thereof without authority, the well-considered deliverance in Wright v. Bank, 110 N. Y. 237, 18 N. E. 79, 1 L. R. A. 289, 6 Am. St. Rep. 356, would have been in point. Here, however, the plaintiff's positive contractual duty was to sell the collateral in a certain event, failing which the defendant could not sell, not being in possession of the stock, unless he paid the debt and thereupon regained the stock, a process that would have annulled, by his surrender, vital terms in the contract.

As appears, determination of the meritorious questions presented by the appeal has not made it necessary to consider the other admitted credits on the larger note, aggregating, omitting that of $86 already mentioned, $341.80, paid, doubtless, by Blakey. The special charges requested for plaintiff, which sought to have the jury advised in accordance with the plaintiff's contention with respect to the sufficiency of pleas 1 to 5, inclusive, were properly refused.

The judgment is not affected with error. It is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.