Clarence H. BALDUS, Plaintiff
and Respondent,

v.

Wendelin MATTERN, Defendant and
Appellant.

No. 7775.

Supreme Court of North Dakota.

Nov. 20, 1958.

Friederich & Ziegler, Rugby, for appellant.

Waldron & Kenner, Minot, for respondent.

JOHNSON, Judge.

In this case, a liberal construction of the pleadings together with the method and manner of procedure adopted during the trial, discloses that the plaintiff is attempting to recover damages arising out of a sale of some real and personal property to him by reason of an alleged breach of the agreement of sale whereby the defendant failed and refused to convey that portion of the property designated as "personal property" by bill of sale warranting the title thereto. The action was tried to a jury in Pierce County, North Dakota.

A summarization of the allegations as they appear in the pleadings will show that the plaintiff's theory is based upon an attempt to recover money damages.

On or about April 9, 1957, the defendant, Wendelin Mattern, was the owner of Lot 3, Block 4, Suburban Homes Addition to the City of Minot, Ward County, North Dakota. Prior to that time he had given the Allen Realty Company, operated by Earl Allen, a listing agreement covering the premises and the bottling plant equipment therein located. This listing agreement was exhibited to the plaintiff by Earl Allen, who claimed that under the agreement he had an exclusive right and option

to sell the above described real and personal property; that the plaintiff agreed to buy it at the specified price of $24,150, set forth in the agreement. On April 9, 1957, the plaintiff paid to Earl Allen, the defendant's broker, $7,000 in cash to apply on the purchase price. On that date the plaintiff executed a contract for deed which had already been executed and acknowledged by the defendant covering the purchase of the real property described in the listing agreement. Thereupon the plaintiff took possession of the premises. At the time of the tender of the contract for deed covering the real property, the defendant also tendered a bill of sale covering the property located in the premises hereinbefore described, and designated in the listing agreement as "bottling plant equipment" and which we will hereinafter refer to as the "personal property." The plaintiff claims that the bill of sale was not in the form agreed upon between the parties. The defendant had eliminated the warranty clause therefrom. Earl Allen, as the defendant's agent, assured the plaintiff that he would get him a proper bill of sale to the personal property, and that it would be transferred to him free and clear of all liens, encumbrances, and with warranty of title. The defendant, Wendelin Mattern, has failed and neglected to deliver such a bill of sale to the plaintiff covering the personal property. Earl Allen was unsuccessful in procuring such a bill of sale from him. At the time of the sale of the property, taxes on the personal property for the years 1952 through 1956 inclusive were due and delinquent, amounting to $1,195.16, and there may be other encumbrances against the personal property. It is asserted that the taxes constituted an encumbrance upon the personal property and that by reason of the provisions of the listing agreement and the statutes of the state of North Dakota, the representations of the defendant's agent, the defendant contracted and covenanted, expressly and impliedly, to convey the property free of encumbrances and with warranty of title; that he has failed, refused and neglected to carry out

his part of the sale. It is then contended that under the terms of the listing agreement, the personal property was separately listed at a price of $5,000; that the plaintiff is willing to let the defendant retain the same, provided the contract for deed be reformed and reduced in the amount of $5,000. The plaintiff sets forth that he has performed all conditions on his part to be performed, but that the defendant has wrongfully and unlawfully refused and failed to fulfill his part of the agreement, and that by reason thereof the plaintiff has suffered special and peculiar damages by reason of attorney's fees, and other expenses amounting to $1,500. He prays judgment that the defendant be required to specifically perform his part of the listing agreement and that he be ordered to satisfy the encumbrances against the personal property, or that the plaintiff be awarded a money judgment for the amount of the liens and encumbrances mentioned and that the defendant be required to furnish a bill of sale with covenants of warranty for the personal property. He also prays that should the defendant be unable to furnish clear title to the personal property, that then the defendant be permitted to retain the property and that the contract for deed be reformed and reduced by the sum of $5,000 and that the plaintiff be allowed to offset as credit on the contract all the monies paid in satisfaction of the taxes, encumbrances or liens on the personal property. He then asks for special damages amounting to $1,500.

The defendant answered denying the allegations of the plaintiff's complaint; admits the ownership of the property, but specifically denies that he has any knowledge that the listing agreement was exhibited to the plaintiff. Then he pleads that the listing agreement was modified prior to the execution of the contract for deed between the plaintiff and the defendant on April 9, 1957, and that the plaintiff, through Earl Allen, entered into the purchase of the real property *only,* as described, for the sum of $24,150 and:

"* * * that said plaintiff has paid the sum of Seven Thousand and no/100 Dollars ($7,000.00) at the time of execution of said contract and the installments as provided for therein."

Then he sets out that he did not specifically agree to warrant title to the personal property. He admits that the plaintiff, after the execution of the contract for deed made the down payment thereon, took possession of the premises and the personal property, and that he has been in possession since that time. He further pleads that he has complied with all the terms and conditions of the sale; that the plaintiff has no cause of action.

Originally the action had been instituted against the defendants, Wendelin Mattern and Earl Allen. It was dismissed as to Earl Allen.

The case was tried to a jury in Pierce County, North Dakota, and resulted in a verdict in favor of the plaintiff for $2,766,

"to be applied in reduction of the obligation under the contract for deed, Exhibit 1."

The burden of the evidence presented at the trial involved an attempt to show that Wendelin Mattern sold both the real and personal property to the plaintiff; that he refused to deliver a bill of sale to the personal property warranting title thereto; that after the purchase of the personal property and down payment thereon, the same was sold for delinquent taxes by the sheriff of Ward County, and that by reason of the inability of the defendant to deliver title to the property sold to the plaintiff, he incurred damages for which defendant is liable.

It is clear that this is not an action for the reformation of a contract. It is also clear that both parties are agreed that the real property was sold, possession delivered, down payment made thereon, and that the plaintiff is in possession thereof. So the action is not one for specific performance of a contract to purchase real property.

It also is evident that since the defendant has lost title to the personal property by reason of the sheriff's tax sale, he is not in a position to convey it to the plaintiff. It would be an idle act to require the defendant to now furnish a bill of sale to the plaintiff with covenants of warranty.

To comprehend the complete situation prevailing at the time of the transaction in controversy it will be helpful to set forth additional facts not set forth in the pleadings.

In April 1953, the defendant sold the personal property to one James F. Ferguson and his wife. At the same time the defendant leased the premises herein involved to Ferguson. In November 1956 Ferguson filed a petition in bankruptcy. The defendant had not prior to that time filed with the Register of Deeds, Ward County, his contract with Ferguson for the sale of the personal property. He was accordingly advised by the bankruptcy court that he would be a general and not a preferred creditor. Mr. Ferguson had made no payments on his contract of purchase of the personal property, nor had he paid rent on the building leased from the defendant, except for a three month period. No referee was appointed in the bankruptcy proceedings; nothing further was done with reference thereto. Mr. Mattern did not file a claim in the bankruptcy proceedings covering the indebtedness due him from Ferguson.

On February 19, 1957, the defendant having taken possession of the personal property and of the building in which it was located, Mr. Ferguson having apparently abandoned it, the defendant entered into a listing agreement with the Allen Realty Company, the pertinent parts of which are as follows:

"I hereby grant to Allen Realty Co. the exclusive right and option until April 17, 1957, and thereafter until cancelled by 30 days' written notice to sell the following described real property owned by me to wit:

"*Buildings & Lot, land being 100 feet by 300 feet, located in the 1100 Block on Highway 83 South, in Minot, N.D., including all Bottling Plant Equipment therein.* (This property comprises the real estate hereinbefore described.)

"Located in Ward County, State of N.D., for the price of $24,150. (being a net of $23,000.00 to myself, the owner), upon the following terms, to wit:

"$500.00 cash, earnest money when sale is made.

"$6500 cash, on or before possession date.

"$200.00 on the 1st of the following month.

"$200.00 on the 1st of each and every month thereafter until paid in full. * * *

"Promptly upon sale of said premises, I agree to furnish an abstract of title continued to date showing good title to said premises in myself, free of encumbrance, and further agree to execute a contract for deed in accordance with the terms of such sale. I agree that I will sell the bottling equipment separate, but complete, for $5,-000.00, if sold first. This leaves the building free to be sold separate for $18,000. net to me the owner. * * * *"

Prior to April 9, 1957, the defendant through his broker, Allen Realty Company, sold these premises to the plaintiff. The plaintiff accepted the contract for deed, made the down payment of $7,000, took possession of the premises, refused to accept the bill of sale, returned it to the defendant upon the assurance of Earl Allen that he would procure from the defendant a bill of sale warranting title to the personal property. This the defendant refused to give, contending he did not sell the personal property to the plaintiff; that by negotiations preceding the execution of the contract for deed the original agreement was modified, and that he sold only

the real property to the plaintiff for $24,-150; that as a part of the consideration for the execution of the contract for deed the defendant agreed and did execute a bill of sale for the personal property but did not warrant title thereto.

The defendant appeals to this court from the judgment entered upon the jury's verdict. He bases his appeal on eight alleged specifications of error. The defendant's eighth specification of error challenged the admission of testimony by the plaintiff of the amount that he was about to incur for attorneys' fees in this action over the objection of the defendant that it was an improper element of proof of damages. Since this specification presents a serious question, we will determine it first.

■ Statutory costs applicable generally are provided for by Chapter 28–26, ND RC 1943 as amended. Only such attorneys' fees as are therein provided for are recoverable as costs by the successful litigant, unless otherwise specifically provided by statute. Costs are purely the creature of statute and an allowance therefor cannot be made unless authorized by statute. Gunsch v. Gunsch, N.D., 67 N.W.2d 311, 329 and authorities therein cited.

■ The general rule is that in absence of any contractual or statutory liability therefor, attorneys' fees and expenses incurred by a plaintiff or which he is obligated to pay in the litigation of his claim against the defendant, apart from the usual court costs, are not recoverable as an item of damages, either in an action ex contractu or an action ex delicto. 15 Am.Jur., Damages, Section 142, page 551. See note 2 for citation of cases. The reason usually assigned for the imposition of this rule is that these expenses are not a legitimate consequence of the tort or breach of contract; that to allow these expenses to a plaintiff which are never allowed to a successful defendant, would give the former an unfair advantage in the contest; that where the statute provides that the suc-

cessful party may be allowed certain sums, termed "costs" by way of indemnity for his expenses in the action, it is not in the power of the court or jury to increase the allowance fixed by statute, however inadequate the allowance may be. Stickney v. Goward, 161 Minn. 457, 201 N.W. 630, 639, 39 A.L.R. 1216. There are some exceptions to this rule, but the case at bar does not fall within any of them. However, it is argued that the defendant's objections to the testimony as to damages was withdrawn, and that the defendant is not now in a position to urge the admission of such testimony as error. To show exactly what happened, we quote the record. During the redirect examination of Mr. Baldus, the plaintiff, his attorney asked him the following question:

"Now have you determined by consulting with your attorneys approximately what it will cost to defend this case—or prosecute through to a conclusion?

"Mr. Friederich: That is objected to as not a proper measure of damages. The attorneys' fees are not a type of damages in this type of lawsuit.

"Mr. Waldron: We contend, Your Honor, that if the plaintiff is put to expense of court proceedings, in order to get those rights that he was entitled to in the first place, that he is entitled to recover any detriment.

"The Court: Well, of course it depends on what you mean by—

"Mr. Friederich: Also assuming a state of facts, Your Honor, not in evidence and that he is going to prevail in this lawsuit, and we aren't conceding that at this point.

"Mr. Waldron: We aren't either, and I'm glad counsel pointed that out.

"(Previous question read by reporter.)

"A. Yes.

"Mr. Friederich: I am going to object further, Your Honor, as not within the province of the pleadings. Nowhere does it—

"(Discussion at bench between the Court and counsel).

"Mr. Waldron: Paragraph 9 of the amended complaint is referred to in discussion at counsel table.

"Mr. Friederich: I'll withdraw my objection.

"The Court: Objection is withdrawn. Proceed.

"The Witness: Let's have the question again.

"(Previous question and answer read by reporter.)

"Q. (By Mr. Waldron) And what will be the amount paid as your attorney fees? A. About $750."

■■ As will be noted, the trial court never ruled upon the objections that were interposed. Apparently it inferred from the statement, "I'll withdraw my objection" that all the objections made had been withdrawn, or that there was only one objection involved. At any rate the testimony was admitted. Appellant's attorney points out that there were three objections made to the elicitation of this testimony. He insists that when he made the statement "I'll withdraw my objection" he referred only to the last objection that the testimony was not "within the province of the pleadings." After the conference at the trial court bench, when he saw that the testimony was within the 9th paragraph of the amended complaint, he withdrew his objection. It is reasonable to interpret his statement to the effect that it applied only to his objection that it was not within the terms of the pleadings. The testimony was not admissible. In view of the record, we cannot say that it is so unequivocally clear on this point as to preclude the defendant from now urging that the admis-

sion of this testimony was error. It was prejudicial error to admit this testimony. Whether the verdict reflects the admission of this testimony we do not know. Since it may have, and since it was inadmissible, a new trial must be granted.

Although we have determined that a new trial must be granted, we will discuss the remaining alleged errors as they seem likely to become issues at the new trial.

In order to discuss the remaining alleged errors fully, it is necessary to comment to some extent on the facts as they now appear in the record. It is, of course, conceded that those facts may be in controversy upon a new trial. The sufficiency of the evidence to support the verdict has not been challenged and is not before us. Therefore, any comment on the evidence in connection with the alleged errors is not to be deemed determinative of the facts upon a new trial of the action.

Specifications of error numbers 1 and 2 relate to the application of the statute of frauds to the transaction between the parties.

■ Defendant first contends that a broker cannot bind his principal unless specifically authorized to do so; that the verdict is contrary to law on the theory that the sale of the real and personal property was within the terms of the applicable statute of frauds. These specifications relating to the application of the statute of frauds to this transaction are without merit. This is not a case in which an agent is attempting to exercise authority to bind his principal to the sale of the real property. Mr. Mattern, the defendant, appellant here, executed the contract for deed for the sale thereof, and accepted prior to the trial of this action, the $7,000 down payment to apply on the purchase.

A great deal of evidence was presented by the plaintiff in an attempt to establish that the bottling plant equipment was so affixed to the building in which it was located as to constitute real property, and

that it therefore came within the warranty clause of the contract for deed. Both parties to this action have treated the property as personal property. The plaintiff in his complaint asks for a bill of sale with warranty. The defendant has assumed that the bottling equipment was personal property. He sold it as such to Ferguson. He listed it with the Allen Realty Company for sale separate from the building if sold first. He tendered a bill of sale for transfer of its title as personal property. It has been assessed as personal property for years, apparently on the theory that it was not part of the realty. It was levied upon by the sheriff for delinquent personal property taxes and sold as personal property. Accordingly, we shall treat this property as personal property. The question then arises whether the sale thereof was within the statute of frauds applicable to personal property. Section 51-0105(1), ND RC 1943.

As we have seen, the plaintiff pleaded that Earl Allen, defendant's agent, had assured him that he would get him a bill of sale to the personal property with warranty of title, and that it was being transferred free and clear of all encumbrances. (Paragraph 5, amended complaint) Under the listing agreement the agent had been granted authority to sell the personal property before he sold the real estate for $5,000 if sold first. With reference to this, the appellant says in his brief:

"Even if the personal property were severable in the listing contract, it would by the plaintiff's own pleadings be worth more than $500.00 and would then become within the provisions of Section 51-0105 NDRC 1943."

■ If the defendant sold the personal property through his agent the defense of the statute of frauds, found in the Uniform Sales Act, Section 51-0105, NDRC 1943, is not available as a bar to plaintiff's right of recovery. The defendant did not in his answer plead this statute of frauds as a defense. This court has held that a

party sought to be charged upon a contract within the statute of frauds must invoke its protection in some appropriate manner, or he will be deemed to have waived his right under it. This court has further held that this statute of frauds is not an available defense when not especially pleaded. Abraham v. Durward, 46 N.D. 611, 618, 180 N.W. 783, 786. In that case this court said in that connection:

"Browne (Browne, St. of Frauds, [5th Ed.], Sec. 135) says:

" 'As the statute of frauds affects only the remedy upon the contract, giving the party sought to be charged upon it a defense to an action for that purpose, if the requirements of the statute be not fulfilled, it is obvious that he may waive such protection, or rather that, except as he undertakes to avail himself of such protection, the contract is perfectly good against him.'

"This principle has been recognized and enforced by this court. Erickson v. Wiper, 33 N.D. 193, 203, 204, 157 N.W. 592; Groff v. Cook, 34 N.D. 126, 157 N.W. 973."

The third specification challenges as error the admission of evidence involving a check for $450, which defendant claims was tendered as a compromise settlement of the action. As has already been noted, at the time of the consummation of the sale by the parties of the real and personal property, taxes were due and delinquent on the personal property amounting to $1,195.-16. The defendant first contends that he never did agree to sell the personal property; second, that he did not agree to warrant title thereto. Accordingly he did not pay these taxes. On September 3, 1957, the sheriff of Ward County served a sheriff's notice of levy in connection with the delinquent personal property taxes. The notice of levy listed the personal property hereinbefore referred to as the bottling plant equipment and stated that the sale would be held at 2 o'clock in the afternoon of September 13, 1957. On August 6, 1957,

the defendant's attorney, Mr. Friederich, wrote to Waldron and Kenner, attorneys for the plaintiff, directing the letter to the attention of Mr. Kenner, in which he stated in part:

"Mr. Mattern has agreed verbally that the property should be offered for tax sale by the Sheriff of Ward County, and that he would bid in at this sale. He would then be in a position to furnish clear title to the personal property, and thereby dispose of the entire case."

Mr. Mattern and his attorney appeared at the sheriff's sale. The defendant bid on the personal property to the amount of $400. The sheriff sold it to the Coca-Cola Bottling Company of Minot for $450. Apparently the defendant and his attorney were under the impression that the defendant had three days in which to redeem from the tax sale conducted by the sheriff of Ward County. Wendelin Mattern, the defendant, issued his check payable to Harris Kenner, one of the attorneys for the plaintiff, dated September 13, 1957, in the sum of $450. On the face of this check appears the following notation:

"For redemption of bottling equipment for C. H. Baldus."

The sheriff of Ward County testified that this check was turned over to him by Mr. Kenner the day after the sale for the purpose of making a redemption from the sale. The check was indorsed by Mr. Kenner:

"Pay to the order of the Sheriff of Ward County
                  (signed)   Harris Kenner."

The sheriff further testified that he obtained advice from the state attorney's office that there was no statutory authority authorizing redemption from sheriff's tax sale of personal property, and that consequently he returned the $450 check to Mr. Kenner, the plaintiff's attorney. From the evidence in the record it appears that the check was turned over to the plaintiff's attorney for the purpose of attempting to

make a redemption from the sale so that the defendant could "furnish clear title to the personal property" and thus be in a position to dispose of the entire case. The sheriff's sale had made it impossible for the defendant to furnish title to the personal property to the plaintiff. If he had been successful in his effort to redeem the property, then he would have been in a position to settle the litigation pending against him.

When the plaintiff attempted to introduce the $450 check in evidence and the facts and circumstances under which it was issued, the defendant objected thereto on the theory that the check had been issued in compromise and settlement of this action. The trial court overruled the defendant's objections and he claims error. The check and the facts surrounding its issuance were properly received in evidence. The circumstances show that it was not issued as an offer of compromise and settlement of this action.

Defendant's requested instruction number 4 was as follows:

"You are instructed that in a listing agreement the expression 'I will sell' or its equivalent, accompanied by a specification of terms, does not confer any authority on an agent to make a contract of sale."

This instruction was also properly refused. This instruction challenges the authority of the defendant's agent. There is no dispute between the parties that Earl Allen was the agent of the defendant at the time of the sale of the property. If the defendant sold the personal property the question arises whether or not Earl Allen, as the agent of the defendant, had authority to assure the plaintiff that he would procure a bill of sale from the defendant with warranties of title. The defendant had given the Allen Realty Company exclusive option to sell both the real and personal property until April 17, 1957, and thereafter until cancelled by 30 days' written notice. The defendant specified the total price for which the property could be sold, giving both the gross and the net price. He had specified the amount of the down payment. He had expressly promised:

"* * * I agree to furnish an abstract of title continued to date showing good title to said premises in myself, free of encumbrance, and further agree to execute a contract for deed in accordance with the terms of such sale. * * *"

Nowhere does the listing agreement negative the agent's authority to promise the purchaser that he would procure for him instruments of title to cover the sale of both the real and personal property with the usual covenants of title.

A broker is an agent who carries on negotiations in behalf of his principal as an intermediary between the latter and third persons in transacting business relative to the acquisition of contractual rights, or to the sale or purchase of any form of property, real or personal, the custody of which is not entrusted to him for the purpose of discharging his agency. 8 Am. Jur., Brokers, Section 2, page 989.

On the same day as the sale of the property was consummated, April 9, 1957, Earl Allen wrote to the defendant saying:

"I have this day sold the premises and equipment which you listed with me under the listing contract of February 18th, 1957. The sale was made to Mr. Clarence H. Baldus of Kenyon, Minnesota at the listed price of $24,-150.00.

"The down payment of $7,000.00 has been turned over to Mr. Solheim of the American State Bank of Minot, and the Contract for Deed has been executed by Mr. Baldus. The Bill of Sale, however, is not in accordance with the listing agreement signed by you and I am asking Mr. Solheim to return the

Bill of Sale. This purchaser insists upon receiving the usual covenants as to title and warranty to the personal property and I have assured him in the presence of Mr. Solheim that you will be required to transfer and deliver title as required per the original listing agreement. *Upon this assurance the deal has been completed."*

Conceding that the listing agreement did not give Mr. Allen express authority to sign any documents of conveyance, nevertheless he had authority to assure the plaintiff that the defendant would transfer the personal property by a conveyance with warranty. Section 3-0210, NDRC 1943 states in part:

"* * * Authority to sell personal property includes authority to warrant the title of the principal and the quality and quantity of the property."

Here the agent had the authority to sell the property. If the personal property was sold by the defendant to the plaintiff, as the plaintiff contends, as a matter of law, under the terms of the listing agreement and under the provisions of the statute, Mr. Allen was within the scope of his authority to assure the plaintiff that he would procure for him the bill of sale covering the personal property with the usual warranty of title.

The plaintiff here is attempting to recover on the theory that by an oral agreement based upon representations made to him by the defendant's agent, he was promised a bill of sale to the personal property with warranty of title. If there was any sale of the personal property and if that promise has not been kept, the plaintiff is entitled to recover from the defendant for whatever damage he can show, as he was entitled to a conveyance of the personal property with the usual warranty of title. If, however, the defendant did not sell the personal property to the plaintiff as he contends and the listing agreement was modified to that effect prior to the sale, there is no basis for recovery against him.

While the court did submit as a part of its instructions, the applicability of the statute relating to implied warranty of the sale of the personal property, if such sale was made, such instruction had no application under the facts of this case.

The defendant next specifies that the trial court erred in giving plaintiff's requested instructions numbered 2 and 3. While number 3 was marked by the trial court as "given" the instructions to the jury do not contain any reference thereto, nor is there any intimation in the record that this instruction which was in the wording of Section 57-2214, NDRC 1943 was ever given.

The plaintiff's requested instruction number 2 was in the identical wording of Section 57-2218, NDRC 1943. This instruction was not applicable to the situation here involved. It was error to give it.

The appellant contends that the verdict and judgment are not supported by proof of damages, and are contrary to the instructions of the court to the jury to the effect that the party claiming damages must not be at fault in contributing to damages by his own want of care; that such care must extend to the protection from further loss after the act complained of; that if the party claiming damages fails to use such diligence, his negligence is regarded as contributing to his injury, and such damages, if any, as could have been so avoided are not regarded as the natural and probable result of the defendant's acts. The only argument advanced as to the lack of support in the evidence of proof of damages is in the nature of an admission that the only damages, if any, that the plaintiff has suffered resulted from the fact that the personal property was subject to delinquent taxes. It is to be remembered that the failure to pay the taxes due and delinquent when the plaintiff bought the property resulted in the loss of the title thereto. As a result of the failure to pay the taxes, if the defendant agreed to sell

the personal property to the plaintiff, the defendant is not now in a position to convey title. Since this case must be tried again, we need not consider whether the verdict and judgment are sufficiently supported by proof of damages. It is possible that any lack of evidence in this regard, and we express no opinion on that, may be supplied upon the new trial. After contending that the verdict and judgment are not supported by proof of damages, the defendant argues that it was the duty of the plaintiff to minimize the damages which amounts to an indirect admission that some damages may have resulted from the defendant's failure to pay the taxes on the personal property. The defendant requested the instruction with reference to the duty of the plaintiff to minimize the damages which he may have incurred. We recognize that the defendant is not challenging the instruction that he requested be given and which was given. However, he is asserting that the verdict and judgment are contrary to the instruction. Under the facts of this case, as they now appear in the record, the instruction was not applicable and should not have been given.

▇ The defendant was attempting to invoke the rule which requires a person injured by the wrongful act of another to exercise reasonable care to avoid loss or minimize the resulting damages and requiring a party to a contract, subject to an injury from a breach of the contract by the other contracting party, to make reasonable efforts and exercise ordinary care and diligence to reduce the resulting damages as much as practicable. 15 Am.Jur., Damages, Section 30, Breach of Contract, page 426; 25 C.J.S. Damages § 33, pp. 499–500. The instruction assumes that there was a contract of sale of the personal property and further that if there was such sale the defendant had agreed to warrant the title thereto. It also assumes that there was a breach of this contract and that it was the duty of the plaintiff to minimize damages resulting from such breach. However, if a

contract in fact existed between the parties as to the sale of the personal property and if one of the terms of such contract was a promise to warrant title, the rule above stated does not apply where the party whose duty to perform a contract had equal opportunity for performance and equal knowledge of the consequences of nonperformance, such party, while the contract is subsisting and in force, cannot be heard to say that the plaintiff might have performed for him. 15 Am.Jur., Damages, Section 30, page 427; 25 C.J.S. Damages § 34, p. 505; Louisville, N. A. & C. Ry. Co. v. Sumner, 106 Ind. 55, 5 N.E. 404, 55 Am. Rep. 719; Pratt Consol. Coal Co. v. Vintson, 204 Ala. 185, 85 So. 502, 503; Montgomery Bank & Trust Co. v. Kelly, 202 Ala. 656, 81 So. 612; Coulter v. Sausalito Bay Water Co., 122 Cal.App. 480, 10 P.2d 780; De Carli v. O'Brien, 150 Or. 35, 41 P.2d 411, 415, 97 A.L.R. 693; Walker v. Salt Flat Water Co., 128 Tex. 140, 96 S.W. 2d 231, 97 S.W.2d 460.

▇ Here, not only did the defendant have an equal opportunity to perform, equal knowledge of the consequences of nonperformance, but in addition had indicated to the plaintiff's attorney that he was going to attempt to perform by bidding in the property at the tax sale. Under such circumstances he cannot be heard to say, if he sold the personal property, that it was the plaintiff's duty to bid in the property at the sheriff's tax sale and thus minimize or reduce the damages which were the consequence of his failure to perform. The instruction should not have been given.

The appellant claims that the verdict and the judgment are contrary to the instructions given by the trial court to the jury, to the effect that where parties to a contract have deliberately put the results of their negotiations in writing in such terms as import a legal obligation without any uncertainty as to the subject or intent of such negotiations, it is conclusively presumed the entire negotiations of the parties and the extent and manner of their

undertaking have been reduced to writing and have been merged in the written agreement.

The instruction as given undoubtedly embodies the correct rule when applied to a proper state of facts. However, in the case at bar, the plaintiff is not attempting to recover on the basis of the contents of the bill of sale tendered to him. He, in effect, contends it does not embody the agreement. The defendant disputes this. The plaintiff refused to accept the bill of sale without warranty. Thus he is not attempting to vary or contradict the terms of a written instrument by parol or extrinsic evidence. Before the rule that no parol evidence can be received to vary the terms of the written instrument alleged to be the contract between the parties to a cause on trial can apply, the writing must be shown to be their contract. 20 Am.Jur., Evidence, Section 1106, pp. 969, 970. For the purposes of the application of the parol evidence rule, the question whether a written contract was intended to be the complete final agreement is to be determined from the circumstances of the case. Spitz v. Brickhouse, 3 Ill.App.2d 536, 123 N.E.2d 117, 49 A.L.R.2d 673. The parol evidence rule has application only to transactions wherein the parties have adopted a writing or writings as a definite expression or integration of their agreement. Janssen v. Tusha, 66 S.D. 604, 287 N.W. 501. The rule admitting parol or extrinsic evidence in the case of writings not expressing the entire agreement has been applied in connection with many instruments, one of which is a bill of sale. 32 C.J.S. Evidence § 1013 c, pp. 1032 and 1033; Kohl v. Lytle Creek Water & Improvement Co., 24 Cal.App.2d 353, 75 P.2d 71; Sewall v. Feller, 288 Mich. 107, 284 N.W. 662. For a discussion of the principle previously set forth see Putnam v. Prouty, 24 N.D. 517, 140 N.W. 93. In the case at bar the plaintiff's right of recovery depends upon whether he bought both the real and personal property, and if he did, whether he made the down payment of $7,000 after delivery of the contract for deed only after having been assured that he would obtain a conveyance of the personal property with warranty of title. Unless the listing agreement was modified, as the defendant contends, prior to the sale of the real property to exclude the sale of the personal property, the plaintiff bought the personal property. If he bought the personal property as he contends, by express authority of law, his agent had the right to bind his principal to a conveyance thereof by an instrument warranting title thereto. Whether the bill of sale tendered by the defendant covering the personal property embodied the entire agreement between the parties is a question of fact for the jury. Since the instruction on this point did not apply to the circumstances that developed in this action, it should not have been given.

The judgment of the trial court is reversed and a new trial granted.

GRIMSON, C. J., and SATHRE, MORRIS and BURKE, JJ., concur.